REASON T. LEE & others, trustees, *vs.* METHODIST EPISCOPAL CHURCH IN THE UNITED STATES & others.

Worcester.   October 2, 1906. — October 16, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Religious Society. Trust. Deed. Equity Pleading and Practice,* Master's report. *Evidence,* Extrinsic affecting writings.

A conveyance of land, recited to be in consideration of one dollar and other valuable considerations paid by certain persons as trustees of an unincorporated religious society named, to such "trustees, their heirs and assigns forever," to have and to hold to the grantees, "trustees, and their heirs and assigns, to their own use and behoof forever," paid for by money raised and contributed by the members of the unincorporated religious society, creates only such a trust as results from the payment of the money, the nature of which in this case the court found it unnecessary to consider.

For a period of about thirty-seven years the pastors of an unincorporated religious society were appointed by a certain church organized under the laws of another State. For the first twenty-four years of this period the unincorporated society was known as a "mission" and was not supplied regularly with a pastor, but during the last thirteen years of the period it was known as a "station" and a pastor was assigned to it annually by the incorporated church. The salary of the pastor thus assigned was paid by the unincorporated society. It did not appear that the unincorporated society ever had been dedicated as a church connected with the incorporated church or that any formal union between the two organizations ever existed. In a suit in equity by persons appointed as trustees by the incorporated church, to establish control over the church building and the lot of land used by the unincorporated society, it was *held*, that the plaintiffs had failed to show any right of property, possession or control of the land and building.

On an appeal from a decree in a suit in equity confirming a master's report it is not open to the appealing party to contend that the master erred in excluding certain evidence offered by him if he took no exception to the report based on the exclusion of the evidence by the master.

Where in a suit in equity a party desires to prove that a conveyance of land to certain persons called trustees to their own use was upon a certain trust,

although it may be important to show what trust should have been declared by the grantees or what trust resulted from the payment of the purchase money, the intention of the grantor in making the deed is immaterial and cannot be shown.

If land and a building thereon have been conveyed by a deed to certain persons as trustees, to hold in trust for a religious society, the appointment of new trustees by the society, although valid, does not transfer the title to the land and building without a deed.

THE following statement of the case is taken from the opinion of the court:

This case comes before us on an appeal from a decree confirming a report made by a master and dismissing the plaintiffs' bill. Exceptions were taken to the master's report, which are impliedly overruled by the decree in question.

The master found that for forty years last past there has been in the city of Worcester an unincorporated religious society by the name of the Bethel African Methodist Episcopal Church. We shall speak of it hereafter as the Bethel Church. The contest here is in effect between two corporations of the same religious faith, for the control of the church building used by the Bethel Church and the land on which it stands, to wit, the African Methodist Episcopal Church of America, chartered under the laws of Ohio, and the Methodist Episcopal Church in the United States, incorporated under the laws of New York. We shall speak of them hereafter as the African Methodist and the Methodist Churches respectively.

For the twenty-six years of its existence previous to 1892 the Bethel Church held services in a hall hired for the purpose. On April 14, 1892, the land in question was conveyed by one Merrell, who then owned it, to Amos F. Jackson and three others. This deed stated that in consideration of one dollar and other valuable considerations paid by Jackson and the others " all of the city and county of Worcester and Commonwealth aforesaid, as trustees of Bethel African Methodist Episcopal Church," the land is conveyed to Jackson and the others, " trustees, their heirs and assigns forever," to have and to hold to the grantees, " trustees, and their heirs and assigns, to their own use and behoof forever." The master finds that the land and building were paid for with money raised and contributed by the members of the Bethel Church.

From the beginning up to June, 1904, the pastors of the Bethel Church were appointed by the African Methodist Church. Until 1891 the Bethel Church was known as a " mission " ; after 1891 as a " station." While a mission it was not regularly supplied with a pastor, but since it became a station a pastor has been annually assigned to it by the African Methodist Church. The salary of the pastor thus assigned was paid by the Bethel Church.

The master states in his report that " There was no evidence introduced before me to warrant the conclusion that Bethel Church had ever been dedicated as a church of the African Methodist Episcopal connection, nor that any formal union between the said two churches ever existed. The evidence tended to show that there never was any dedication of said Bethel Church, nor any formal union with the said African Methodist Episcopal Church."

It appears that in 1904 the Bethel Church thought its building inadequate for its needs, and raised $409.08 for the construction of a new church building. They applied to the African Methodist Church for aid, without success. They then opened negotiations with the Methodist Church, looking towards severing their connections with the African Methodist Church and taking on ecclesiastical connections with the Methodist Church, if the latter would give them the aid they wished. This the Methodist Church promised to do. Thereupon a special meeting of the Bethel Church was called for November 9, 1904, at which the offer of the Methodist Church was accepted. The membership of Bethel Church, on November 9, 1904, was thirty-five. How many were present at this meeting was not disclosed in the evidence. On December 7, 1904, twenty-eight members of the Bethel Church sent to one Jacobs, the presiding elder of the African Methodist Church, a withdrawal from that Church. Jacobs was the presiding elder " into whose official charge the said Bethel Church was given " by the African Methodist Church. On December 14 Jacobs came to Worcester and announced that he would preach on January 25, and would hold a meeting to investigate the withdrawal on Monday, January 26, 1905. The meeting was not held. " After Jan. 26, 1905, Dr. Jacobs, acting on the theory that the Rev. W. B.

Perry had resigned as pastor of said Bethel Church, and that the trustees duly elected in June or July, 1904, had also resigned by the effect of said letter and certificate, proceeded to assume the duties of pastor of said church, and also, about Feb. 1, 1905, proceeded as pastor to appoint three trustees of said Bethel Church, and appointed Reason T. Lee, James McKinney and Stephen Cook, named in the entitling clause of the plaintiffs' bill. After Jan. 26, 1905, Dr. Jacobs did not formally call any other meeting of the members of Bethel Church for any purpose." On or about February 1, 1905, " as a further step in carrying out the said agreement between " the Bethel Church and the Methodist Church, the members of the Bethel Church in a body and as a church were received into the Methodist Church, and on April 1, 1905, their pastor, Rev. W. B. Perry, was received into conference relations with the New York church. " Since April 1, 1905, said Bethel Church has been conducted by the said Perry, under the supervision of a presiding elder appointed by the New England conference of the Methodist Episcopal Church and in accordance with the discipline thereof, and has since ceased to have ecclesiastical or other relations with the said African Methodist Episcopal Church."

On March 9, 1905, the present bill was filed by the three persons appointed by Dr. Jacobs as trustees after January 26, 1905, against the Methodist Church corporation and Albert A. Nunally and two others who, in December, 1904, were the trustees of the Bethel Church, and who had undertaken to convey the land and church building as trustees of the " Bethel African Methodist Episcopal Church " to themselves as " trustees of the Bethel Methodist Episcopal Church." It does not appear that Jackson and the other grantees in the deed of April 14, 1892, ever conveyed the premises therein described to Nunally and his associates or any one else. The prayer of the bill was for an injunction restraining the defendants from preventing the plaintiffs from enjoying the use of the land and church building in question; that Nunally and his associates be directed to convey the land and church building to the plaintiffs and deliver up to them the $409.08 raised for building a new church. The conclusion of the master was that the bill should be dismissed.

The case was recommitted to the master. On the second

hearing conflicting evidence was offered by the plaintiffs, for the purpose of showing that it was the intention of the grantor in the deed to Jackson and others to convey the property to the trustees in a trust capacity and not in their individual capacity. This evidence was heard *de bene* and finally excluded by the master. No exception was taken to the master's report by reason of this ruling.

*J. L. Mitchell* (of Rhode Island), for the plaintiffs.

*J. K. Greene*, for the defendants.

LORING, J. [After the foregoing statement of the case.] Neither counsel dealt specifically with the several exceptions. We shall deal with the case accordingly.

The plaintiffs' contention here is that " The defendants having severed their membership with Bethel A. M. E. Church, a religious society, forfeited their rights to its property." In support of this contention their counsel has cited among other cases *Shannon* v. *Frost*, 3 B. Mon. 253; *Watson* v. *Jones*, 13 Wall. 679; *Bose* v. *Christ*, 193 Penn. St. 13; *Franke* v. *Mann*, 106 Wis. 118.

But the difficulty with that argument and those citations is that no facts like the facts on which those cases were decided are found by the master in the case at bar. The plaintiffs' counsel has assumed in his argument that the Bethel Church became a part of the African Methodist Church, and that by force of the "discipline" of that church its property became the property of that church. But on the findings of the master the Bethel Church did not become a part of the African Methodist Church, and we cannot say that its property would have become the property of the African Church by force of the "discipline" of that church if it had. For we have no means of knowing what the "discipline" so often referred to by counsel for the plaintiffs is. It is not made a part of the master's report, and the evidence before the master is not before us.

All that appears is that the land in question was conveyed to Jackson and others to their own use, and that the land and building were paid for by money raised and contributed by members of the Bethel Church. That church never has been dedicated as a church of the African Church, and no formal union between the Bethel Church and the African Church has ever existed.

Under these circumstances the only trust affecting the property in question was that which results from the payment of the money. Just what that trust would be need not be considered here. It is enough that on the facts before us it does not result in a trust subjecting the land to the ownership and control of the African Methodist Church.

On the findings of the master, which alone are before us, the plaintiffs have failed to show any right of property, possession or control of the land and building, or of the $409.08.

No exception was taken to the master's report based on the exclusion of evidence by the master, and therefore that question is not before us. *Hillier* v. *Farrell*, 185 Mass. 434. Apart from that, the evidence excluded was immaterial. It is or may be important what trust should have been declared by the grantees, or what trust resulted from the payment of the money. What was the intention of the grantor is of no importance. Even if the deed had been a deed to Jackson and others as trustees, the title to the land and building would not have vested in Nunally and others by force of their appointment as trustees, although the parties in this case seem to have assumed that it would. The issue on which the excluded evidence was offered was, as we have said, on an immaterial point. In either event the legal title is in Jackson and his co-grantees and their heirs, or in the survivors or survivor of them.

*Decree affirmed.*