FRED G. BURNHAM & another *vs.* EDWARD F. DOWD & others.

Hampden.     February 24, 1914. — March 31, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & DE COURCY, JJ.

*Equity Pleading and Practice,* Master's report: rulings on evidence, motion to recommit. *Labor Union. Equity Jurisdiction,* To enjoin unlawful interference with business, Damages. *Boycott. Damages,* In equity.

On a motion in a suit in equity to recommit a master's report based on rulings of the master admitting evidence at the hearing before him, if it appears that the evidence thus objected to was admitted at the hearing before the master without objection and that no motion was made before the master to strike out this evidence, the motion to recommit is addressed merely to the discretion of the trial judge, and where, as in the present case, there is no reason to suppose that his discretion was exercised wrongly, a denial of the motion by him is final.

A dealer in masons' supplies may maintain a suit in equity against the members of a labor union, who are bound by their rules and votes not to use or work upon any material purchased from dealers declared by the union to be "unfair," to enjoin the defendants from declaring the plaintiff to be "unfair" because he continued to furnish masons' supplies to a building contractor declared by the union to be "unfair;" such action against the plaintiff being in intention and effect a boycott.

A boycott declared by the members of a labor union against a dealer in masons' supplies, who also maintains other branches of his business, is none the less an unjustifiable interference with his business because it is aimed at only one branch of it.

In a suit in equity by a dealer in masons' supplies against the members of a labor union, who are bound by their rules and votes not to use or work upon any material purchased from dealers declared by the union to be "unfair," to enjoin the defendants from declaring the plaintiff to be "unfair" because he continued to furnish masons' supplies to a building contractor declared by the union to be "unfair," where the plaintiff is held to be entitled to an injunction, he also may be awarded damages if it is plain that he has sustained substantial damage, although it may be impossible to determine the total amount of the plaintiff's loss and it may be difficult to ascertain with absolute certainty the money value of even the damages that are capable of proof.

BILL IN EQUITY, filed in the Superior Court on February 19, 1913, by the members of a partnership engaged in the business of dealing in flour, grain, hay and masons' supplies at Holyoke, against the officers and members of an unincorporated association called the Bricklayers' and Plasterers' Union, Number Two of Holyoke, to enjoin the defendants from keeping the names of the plaintiffs on the "unfair list" of the union, from threatening to strike or to leave the employ of any owner, builder or contractor because of the purchase of masons' supplies by such persons from the plaintiffs or of having had other dealings with the plaintiffs, and from ordering or inducing any strike against any owner, builder or contractor for such reason; and praying also for damages and for further relief.

The case was referred to Wallace R. Heady, Esquire, as master. The essential facts found by him are stated in the opinion. The master found that the actual net loss to the plaintiffs, which at the time of the filing of the bill had resulted from the acts of the defendants set out in the master's report, amounted to the sum of $500.

Later the case was heard by *Dubuque,* J., upon the defendants' exceptions to the master's report and upon a motion of the defendants to recommit the master's report for the reason that the master had not set forth in his report the rulings made by him as to the admission of evidence upon which the defendants' exceptions were based and so much of the evidence as was necessary to bring such questions of law intelligently before the court. The judge denied the motion of the defendants to recommit the report. He overruled the defendants' exceptions and ordered that the master's report be confirmed. At the request of both parties the judge reserved the case for determination by this court.

The case was submitted on briefs.

*J. B. Carroll, W. H. McClintock & J. F. Jennings,* for the defendants.

*N. P. Avery,* for the plaintiffs.

SHELDON, J.  If it appeared from this record that the defendants' exceptions to the admission of evidence by the master had been taken at the hearing before the master, and that the objections made to the report by the defendants upon this ground and the exceptions filed by them in pursuance thereof had thus been based upon a proper foundation, it would not have been easy to justify the refusal to recommit the master's report in order that the rulings made upon these points and excepted to by the defendants might be reviewed.  But this is not the case.  So far as appears, all the evidence to the admission of which objection afterwards was made was received originally without any objection.  Nor does it appear that a motion afterwards was made to strike out any part of this evidence, if that would have been sufficient.  Undoubtedly, if seasonable objections had been made by the defendants and had been overruled by the master, and this fact had been shown to the Superior Court, the motion to recommit would have been granted.  As the case stands, the motion was addressed merely to the discretion of the judge who heard it, and there is no reason to suppose that his discretion was exercised wrongly. *Cook* v. *Scheffreen,* 215 Mass. 444, 447.  *Lee* v. *Methodist Episcopal Church,* 193 Mass. 47.

We see no ground on which any of the exceptions to the master's report can be sustained.  Most of them relate to findings of fact, as to which the evidence is not before us.  Others refer to the admission of evidence, and cannot be considered for the reasons already stated.  The defendants have not argued separately any of these exceptions, although they have not been waived, and accordingly each one of them has been considered.  But it is not necessary to discuss them in detail.

The leading material facts found by the master may be summarized as follows: The plaintiffs carry on a business which includes the selling at wholesale and retail of masons' supplies. The defendants are members of a voluntary unincorporated association or labor union in Holyoke, hereinafter called the union. It is the object and purpose of all the members of this union to

make themselves and the union as powerful as possible in Holyoke and its immediate environment, and to exert their power for the purpose of bettering the labor conditions of members of the union, especially with reference to rates of wages and periods of labor. It is a part of their principles which all the members of the union are under obligation to respect and uphold, that all men of their craft or trade working in Holyoke or its immediate vicinity, that is, within the jurisdiction of their union, must be members thereof; that all their members should refuse to work with men of their craft who were not members of the union or had not declared their intention to join it; should refuse to work for employers who were declared "unfair" by the union; and should refuse to use in their work any materials that had been sold or furnished by any merchant who was declared unfair by the union. They aimed to accomplish their purpose, of bettering the labor conditions of their members, primarily by persuasion coupled with the fear of consequences if the party addressed should not yield, and secondarily, if necessary, by troubles and loss to the business of contractors or merchants. This union was connected with the Building Trades Council of Holyoke, which represented the various building trades unions (some fourteen in number) of Holyoke and vicinity, and was composed of delegates sent from these unions. In July, 1911, one Gauthier employed non-union masons in certain construction work in Holyoke, against the protest of this union; and the plaintiffs furnished to him masons' materials. In August, 1911, the union voted to refuse to handle any building material of any firm that furnished stock to Gauthier or to any "unfair" contractor. Soon after this, the delegates from the union to the Building Trades Council reported these facts to that body; and the agent of the council sent a written notice to the plaintiffs that Gauthier was "doing work contrary to laws of Building Trades Council," and was "therefore recognized by us as being 'unfair,'" and expressing the hope of "cooperation in this matter." The plaintiffs continued to furnish material to Gauthier. Thereupon, by successive votes, the union declared that the plaintiffs were "unfair." This was for the reason that the plaintiffs continued to furnish masons' supplies to Gauthier, and refused to promise not to sell to any party who should not be in good standing with the union. All the members

of the union would have refused since August, 1911, and would refuse now and in the future (so long as the plaintiffs were held by the union to be unfair) to work with materials purchased from the plaintiffs. It has not been and in the future it will not be practicable, without the labor of members of the union, to perform building contracts of any size or importance in Holyoke or its immediate vicinity, without serious inconvenience, trouble and loss to the contractors, and the defendants have intended that owners and contractors should fear this result if they purchased masons' supplies from the plaintiffs. The union and its officers and members, including some of the defendants, have notified various owners and contractors, who either were buying or were intending to buy masons' supplies from the plaintiffs for construction work upon which members of the union necessarily were employed, that the plaintiffs were upon the "unfair" list of the union, and that its members would not use or work upon material furnished by the plaintiffs, and in substance threatened to strike if masons' supplies were purchased from the plaintiffs. These contractors and owners feared, and it was intended that they should fear and they were justified in fearing, that these threats would be carried out; and in consequence thereof they ceased or refrained from buying supplies of the plaintiffs, as otherwise they would have done, and the plaintiffs' sales of masons' supplies were considerably diminished and their profits lessened in consequence of these facts. This state of affairs will continue, to the serious loss and damages of the plaintiffs, unless they shall promise not to sell to any one considered unfair by the union.

The defendants did not act from actual personal malice toward the plaintiffs; but their acts were done in pursuance of their union principles and purposes, as above stated, and without caring for the injurious consequences to the plaintiffs. Indeed these injurious consequences were anticipated and contemplated by the defendants. They did not attempt to declare or enforce any boycott against the plaintiffs, except as this is included in the acts that have been mentioned. During the period involved in this case, some of the defendants have bought for their own use small quantities of masons' supplies from the plaintiffs, and others of the defendants during the same time have made purchases from the plaintiffs in other branches of the plaintiffs' business.

Although there has been a little contrariety of decisions in other jurisdictions, we do not consider that there is any doubt as to the rule of law to be applied in this case. The defendants have no real trade dispute with the plaintiffs. No one of the members of the union is, or so far as appears ever has been, employed by the plaintiffs. The plaintiffs have not interfered or sought to interfere with the employment of any of those members, or with the rates of pay, the periods of labor, or any of the conditions of such employment. There is no competition between these parties, as there was in *Bowen* v. *Matheson*, 14 Allen, 499. The matter that lies at the foundation of these proceedings is a dispute between the union and Gauthier. He employs or has employed non-union labor; the defendants (including under this term all the members of the union) object to this. They have a right to say that they will do no work for him unless he will give to them all the work of their trade, that they will do all or none of his work. That was settled by our decision in *Pickett* v. *Walsh*, 192 Mass. 572. If they were employed by Gauthier, and if he employed also non-union men of their craft, they would have a right, unless they were bound by some term of their contract of employment, to strike unless all of this work should be given to them or to their associates. But it was pointed out in the same case that not all strikes are lawful; and it now is settled in this Commonwealth that it is a question of law whether any particular strike is a lawful one. *Reynolds* v. *Davis*, 198 Mass. 294. *DeMinico* v. *Craig*, 207 Mass. 593. But the second point decided in *Pickett* v. *Walsh*, *ubi supra*, is in our opinion decisive of the principal question raised in this case. It was there held that the members of a labor union who are employed by a contractor to do work upon a building, and who have no dispute with that contractor as to work which they or their fellows are doing for him, cannot lawfully strike against him for the mere reason that he is doing work and employing some of their fellows upon another building upon which non-union men are employed to do like work, not by him, but by the owner of that building. The language and reasoning of that decision are applicable here. The reason of the decision was that, as the court said (Loring, J., 192 Mass., page 587), such a strike "has an element in it like that in a sympathetic strike, in a boycott and in a blacklisting, namely: It is a refusal to work

for A, with whom the strikers have no dispute, because A works for B, with whom the strikers have a dispute, for the purpose of forcing A to force B to yield to the strikers' demands." So in the case at bar, the threat of the defendants was to strike against owners and contractors, with whom the defendants had no dispute, for the purpose of forcing those owners and contractors to refuse to buy masons' supplies from the plaintiffs, and thus by the loss of business and of the profits to be derived therefrom, force the plaintiffs to refuse to sell to Gauthier or others whom the defendants might call unfair, and thus put a pressure upon those persons which should force them to cease employing non-union masons and to give all their mason work to the defendants. This was a step further than what was held in *Pickett* v. *Walsh* to be an unlawful combination for an unjustifiable interference with another's business. It was in intention and effect a boycott; and it was none the less so because it was aimed at only one branch of the plaintiffs' business. There is no more right to interfere with one branch of a merchant's business, to obstruct it and lessen its profits, and so far as may be done to destroy it entirely, than there is so to interfere with, obstruct and destroy the whole of that business. The difference is merely one of degree, not of kind. And *Pickett* v. *Walsh* is well supported as to this point both upon the reasoning of the opinion and by authority. See the cases collected on page 588. It has been cited and followed in our later decisions. *Reynolds* v. *Davis*, 198 Mass. 294. *M. Steinert & Sons Co.* v. *Tagen*, 207 Mass. 394. *Folsom* v. *Lewis*, 208 Mass. 336. *Hanson* v. *Innis*, 211 Mass. 301. Most of the decisions in other jurisdictions, besides those cited in *Pickett* v. *Walsh*, are to the same effect. *Aikens* v. *Wisconsin*, 195 U. S. 194. *Emack* v. *Kane*, 34 Fed. Rep. 46. *Shine* v. *Fox Bros. Manuf. Co.* 156 Fed. Rep. 357. *Rocky Mountain Bell Telephone Co.* v. *Montana Federation of Labor*, 156 Fed. Rep. 809. *American Federation of Labor* v. *Buck's Stove & Range Co.* 33 App. D. C. 83. *Gompers* v. *Buck's Stove & Range Co.* 33 App. D. C. 516. *Doremus* v. *Hennessy*, 176 Ill. 608. *Kemp* v. *Amalgamated Association of Street & Electric Railway Employees*, 153 Ill. App. 344. *Perkins* v. *Pendleton*, 90 Maine, 166. *Lucke* v. *Clothing Cutters & Trimmers' Assembly*, 77 Md. 396. *Newton Co.* v. *Erickson*, 70 Misc. (N. Y.) 291. *State* v. *Huegin*, 110 Wis. 189, 249, *et seq.*

As was said in *Hopkins* v. *Oxley Stave Co.* 83 Fed. Rep. 912, 917: "Persons engaged in any service have the power, with which a court of equity will not interfere by injunction, to abandon that service, either singly or in a body, if the wages paid or the conditions of employment are not satisfactory; but they have no right to dictate to an employer what kind of implements he shall use, or whom he shall employ."

We have examined with care all the decisions that have been referred to by the defendants. Some of them turn upon a different state of facts from that which here is presented. Some of them we should hesitate to follow to the conclusions toward which they logically tend. But the result which we have reached seems to us to be in accord with sound reason and supported by authority.

The defendants contend earnestly that each one of them has a perfect right to refrain from dealing himself, and to advise his friends and associates to refrain from dealing, with the plaintiffs, and that they have a right to do together and in concert what each one of them lawfully may do by himself. But that is not always so. It is especially true in dealing with such questions as these that the mere force of numbers may create a difference not only of degree, but also of kind. No doubt the defendants' organization is a lawful one, and certainly some of the objects aimed at by the union thus formed are both legal and of high utility. But, as was pointed out by the Supreme Court of the United States in *Gompers* v. *Buck's Stove & Range Co.* 221 U. S. 418, 439, "the very fact that it is lawful to form these bodies, with multitudes of members, means that they have thereby acquired a vast power, in the presence of which the individual may be helpless. This power, when unlawfully used against one, cannot be met, except by his purchasing peace at the cost of submitting to terms which involve the sacrifice of rights protected by the Constitution; or by standing on such rights and appealing to the preventive powers of a court of equity. When such appeal is made it is the duty of government to protect the one against the many as well as the many against the one." To the same effect is what was said by this court, through Mr. Justice Hammond, in *Martell* v. *White*, 185 Mass. 255, 260, quoting the words of Lord Justice Bowen in *Mogul Steamship Co.* v. *McGregor*, 23 Q. B. D. 598, 616: "Of the

general proposition, that certain kinds of conduct not criminal in any one individual may become criminal if done by combination among several, there can be no doubt." So in *Pickett* v. *Walsh*, 192 Mass. 572, it was held among other things that what is lawful if done by an individual may become unlawful if done by a " combination of individuals." And see the cases collected on page 582 of that opinion. This principle is peculiarly applicable to cases like the one at bar. There is no such thing in our modern civilization as an independent man. No single individual could continue even to exist, much less to enjoy any of the comforts and satisfactions of life, without the society, sympathy and support of at least some of those among whom his lot is cast. Every individual has the right to enjoy these, and is bound not to interfere with the enjoyment of them by others. That right indeed is usually one of merely moral obligation, incapable of enforcement by the courts, but it is none the less an actual wrong for any body of men actively to cause the infringement of that right in definite particulars; and especially where such an infringement is made possible only by the concerted action of many in combination against one, and results in direct injury to his business or property, the courts should interfere for the protection of that person.

In *Worthington* v. *Waring*, 157 Mass. 421, where the court refused to enjoin the defendants from putting the names of the plaintiffs upon a black list and thus making it impossible for them to obtain in that neighborhood employment in their trade, there was a misjoinder of plaintiffs. Apart from this techincal difficulty, the decision was put upon the ground that while courts of equity may protect property from threatened injury when the property rights are equitable or when they cannot be protected adequately at law, yet equity has in general no jurisdiction to restrain the commission of crime or to assess damages for torts already committed, and the rights there alleged to have been violated were said to be merely personal rights and not rights of property. That case is not applicable here, for the rights now in question are distinctly property rights. Accordingly we need not consider whether the doctrine of that case can be reconciled with our later decisions, or whether it now would be followed if the same state of facts were again presented.

The question of damages remains to be dealt with. Upon that we find no error in the master's report. That the plaintiffs have sustained substantial damage is manifest; and the mere facts that it may be impossible to determine the total amount of their loss, and that it may be difficult to ascertain with absolute certainty the money value of even the damages that can be proved, is no reason for refusing to allow to the plaintiff what has been found to be capable of substantial proof. *Fox* v. *Harding,* 7 Cush. 516. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. *C. W. Hunt Co.* v. *Boston Elevated Railway,* 199 Mass. 220, 235, *et seq. De Minico* v. *Craig,* 207 Mass. 593, 600. We find nothing inconsistent with this in *Todd* v. *Keene,* 167 Mass. 157, *John Hetherington & Sons* v. *William Firth Co.* 210 Mass. 8, 23, *et seq.,* or the other cases relied on by the defendants. Doubtless merely speculative damages or any damages that have not been proved cannot be recovered; but this does not require absolute mathematical demonstration or prevent the drawing of reasonable inferences from the facts and circumstances in evidence.

The result is that the plaintiffs are entitled to a decree enjoining the defendants from keeping the names of the plaintiffs upon their unfair list, from threatening to strike or to leave the work of any owner, builder or contractor by reason of such persons having purchased masons' supplies from the plaintiffs or having dealt otherwise with the plaintiffs, and from ordering or inducing any strike against an owner, builder or contractor for such reason, and that the plaintiffs shall recover from the defendants the sum of $500 with interest from the date of the filing of the master's report, and their costs of suit, and have execution therefor.

*So ordered.*