EDWIN R. FAIRBANKS & others *vs.* WILLIAM C. MCDONALD
& others.

Essex.    November 4, 1914. — November 24, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Equity Pleading and Practice,* Inferences from facts reported by master, Decree. *Evidence,* Inferences. *Equity Jurisdiction,* To enjoin unlawful interference, Damages. *Labor Union.*

The power and duty of this court, when hearing a suit in equity on an appeal from a final decree, to draw inferences from facts found by a master or by a judge who heard the case cannot be disputed.

The officers and members of a labor union may maintain a suit in equity to enjoin the officers and members of another labor union from conduct intended to compel the plaintiffs' employers to discharge the plaintiffs and to refuse to give them any further employment, where it appears that the defendants acted, not for the purpose of securing for the members of their union all the work that was to be had from their employers, but to deprive the plaintiffs of employment and make it impossible for them to obtain their livelihood by their

---

labor unless they should become members of the defendants' union upon whatever onerous terms that union should choose to impose.

In such a suit it is proper to award $500 assessed by a master as damages to one of the plaintiffs who, at the time of his discharge caused by the defendants, was sixty-five years of age, had worked for the employer for fourteen years and would still have been working for him if the defendants had not interfered, whose yearly wages for nine years preceding the hearing had been $562, and who at the time of the hearing had been out of employment for six weeks, the master stating that in making such assessment he had in mind the loss such plaintiff already had sustained and the prospect that his inability to secure work might extend over a substantial period of time. Under such findings of the master, however, the plaintiff was not given damages for the permanent loss of access to the labor market and was not barred from having further relief by way of injunction.

In a suit in equity by officers and members of one labor union against officers and members of another labor union to enjoin unlawful interference with the employment of the plaintiffs, where an injunction is ordered and nominal damages are given to some plaintiffs and substantial damages to another, the final decree should not order several judgments as to the damages for the several plaintiffs and a joint judgment for costs, but should order the defendants to pay to each plaintiff the amount found in his favor, and to pay the stated award of costs to all the plaintiffs jointly.

BILL IN EQUITY, filed in the Superior Court on February 24, 1914, by Edwin R. Fairbanks, Edward Willett and Edward A. Tasker, three officers and members of a voluntary unincorporated organization known as the Boot and Shoe Cutters Assembly, 3662, of the Knights of Labor, acting on behalf of themselves and of all other members of the Assembly, against certain officers of the Boot and Shoe Cutters Local, 62, of the United Shoe Workers of America, certain officers of the Joint Council of the United Shoe Workers of America, which is a national association, voluntary and unincorporated, with which Local, 62, is affiliated, and Fred A. Trafton, superintendent of the cutting department of one Sewall Clark, a shoe manufacturer doing business under the firm name of Williams, Clark and Company, the bill alleging that the defendants other than Trafton fairly represented the interests of the other members of Local, 62, and of the United Shoe Workers of America, and that they were joined both as individuals and as representing such other members.

The suit was referred to James W. Santry, Esquire, as master.

The purpose of the bill, as stated by the master, was to restrain the defendants from interfering with the employment of the plaintiffs and of other members of Assembly, 3662, and also to

have damages assessed by reason of an alleged unlawful interference with the employment of the plaintiffs, resulting in their discharge from the concern of Williams, Clark and Company, by whom they had been employed as shoe cutters.

The master found in substance that the defendants, except Trafton, were proper representatives of the interests of all other members of their respective organizations and that, with respect to the matters in issue, they acted within the scope of their powers as such representatives. Other findings were in substance as follows:

Assembly, 3662, at one time had been a large and powerful labor organization, comprising substantially all of the shoe cutters in Lynn. As a result of some internal trouble, many members severed their connection with it and became members of Local, 62, the membership of the assembly being reduced to eighteen. Local, 62, had a membership of about fourteen hundred.

On January 23, 1914, because of a grievance in the lasting department of Williams, Clark and Company, the members of the United Shoe Workers of America employed by that firm, including members of Local, 62, struck. The plaintiffs remained at work. After the immediate grievance was settled, the defendants refused to call off the strike because Local, 62, desired to have a price list pertaining to the cutting room adopted by the firm and it had been decided that this would be an opportune time to have this matter considered. The price list that was under consideration, besides naming in detail the prices that were to be charged for cutting the various parts of a shoe, also contained a stipulation, in substance, that all help needed should be employed through the office of Local, 62, and that no person, who for good reasons was objectionable to Local, 62, should be employed in the cutting room. There was a conference of persons representing the various interests of the defendants which lasted several hours, at which there was no discussion as to the matter of prices. At no time during negotiations for the settlement of this strike was there any serious difference between the parties as to prices. The matter that caused the greatest concern was the stipulation with reference to the employment and the retention of help and the effect that this would have upon the plaintiffs.

At the time of this conference, the plaintiffs were still in the

employ of Williams, Clark and Company, and this fact was known to two of the defendants, Atwill and Gage, who were members of an investigating committee of the national organization of the defendants and who attended the conference, and they further knew that the plaintiffs had continued at work after the strike had been declared, and that they were not members of Local, 62. The plaintiffs were in every way satisfied with their work, one of them having been in the firm's employ for a period of about fourteen years. They were regarded by the defendant Trafton as competent and efficient workmen and he desired to retain their services, but, from the statements made by the two defendants referred to, and from their actions at the conference, he was reasonably impressed with the belief that, if he did so, the strike, which had not then been officially declared settled, would be continued in force, although the grievance for which it originally had been called had been satisfactorily adjusted. He realized that any prolongation of the strike would cause loss and embarrassment to his employer, and this was a matter which he desired to avoid. The fact that the plaintiffs were in the employ of Williams, Clark and Company at the time of the submission of this price list was a very embarrassing feature, and for the purpose of eliminating it as much as possible from the situation, it was decided that the factory should be shut down on the day following the conference and that all workmen, including the plaintiffs, should be excluded from it. One purpose of such action was that it would result in a situation that would require the plaintiffs to become members of Local, 62, before they could be re-employed. The plaintiffs Tasker and Willett both made an effort to join Local, 62, but were prevented from doing so by reason of the amount of the fee, which is hereinafter discussed, that was imposed. Neither of them ever made formal application for reinstatement. The plaintiff Fairbanks never made any effort to join this Local.

The agreement proposed finally was signed. The strike then was called off and four days later all of the firm's employees except those in the cutting room returned to work. Four days later still the cutters returned, but, when the plaintiffs presented themselves for work, after some talk with the defendant Trafton as to whether they had seen the business agent of Local, 62, with

reference to becoming members of Local, 62, they were not employed. Trafton would then have employed the plaintiffs had they been members of Local, 62, but he was prevented from doing so by reason of the agreement that he had signed. At the time he signed the agreement, he was influenced largely by the feeling that unless he did so the strike, which was then in progress, would be continued, with resultant loss and embarrassment to his employer, and this feeling on his part had a reasonable foundation, and was caused by the statements and actions of the defendants who were at the conference referred to.

There was great hostility on the part of the defendants as officers and members of Local, 62, and also as officers and members of the United Shoe Workers of America, toward the plaintiffs and toward other members of Assembly, 3662. When the plaintiffs, Tasker and Willett, sought reinstatement in the Local, a fee of $100 was imposed upon them, the officers of the Local knowing that they were seeking membership in Local, 62, in order to be reinstated in the employ of Williams, Clark and Company and having reasonable grounds for believing that they were in no financial condition to pay this sum. The fee was imposed for the purpose of punishing these men for their persistence in not becoming members of the United Shoe Workers of America.

By these methods, and by the manner in which these defendants have dealt with various employers, an impression reasonably had been created among employers that the employment of these plaintiffs or of other members of Assembly, 3662, might result in trouble and embarrassment to them, and for this reason the plaintiffs and all members of Assembly, 3662, were effectually excluded from employment in substantially all of the factories of Lynn.

On the question of damages, the master's findings were as follows: "It appeared that shortly after their discharge by Williams, Clark and Company, the plaintiffs Tasker and Willett obtained employment in Stoneham, and it did not appear that they had suffered any loss by reason of any diminution in their wages, and I therefore find that if any damages should be assessed in their cases, the amount of the same should be nominal.

"In the case of the plaintiff Fairbanks, however, it appeared

that he is a man of about sixty-five years of age, and up to the date of his discharge from Williams, Clark and Company, had been in the employ of that concern substantially for a period of fourteen years, and would now be working there had it not been for the interference of the defendants. At the time that the hearings in this case were in progress he had been out of employment for about six weeks. For the past nine years his average yearly wages have been $562.46. Having in mind the loss that he has already sustained, and the prospect that his inability to secure work may extend over a substantial period of time, it seemed to me, and I find, that he should be allowed the sum of $500 as damages."

An "order" was made confirming the master's report and a final decree was entered by order of *Hamilton*, J., dismissing the bill as against Trafton, enjoining the other defendants and the officers and members of the Local, 62, and the United Shoe Workers of America, "from interfering and from combining, conspiring or attempting to interfere with the employment of the plaintiffs" and of all members of the Boot and Shoe Cutters Assembly, 3662, Knights of Labor, "by representing or causing to be represented, in expressed or implied terms to any employer of said plaintiffs or of said members of said plaintiffs' association, or to any person or persons or corporation who might become employers of any of the said plaintiffs or of members of their said association, that such employers will suffer or are likely to suffer loss or trouble in their business from employing or continuing to employ said plaintiffs or any members of their said association; or by intimidating or attempting by threats, direct or indirect, expressed or implied, of loss or trouble in business, or otherwise, any person or persons or corporation who now are employing or may hereafter employ or desire to employ said plaintiffs or any members of the plaintiffs' said association; and from any and all acts, or the use of any methods, which by putting or attempting to put any person or persons or corporation in fear of loss or trouble, will tend to hinder, impede or obstruct the plaintiffs or any member or members of the plaintiffs' said association, from securing employment or continuing in employment." Other portions of the decree are described in the opinion.

The defendants, excepting Trafton, appealed.

The case was submitted on briefs.

*E. C. Jacobs, E. J. Coughlin & R. W. Currier,* for the defendants.

*H. D. Linscott,* for the plaintiffs.

SHELDON, J.  In addition to the facts found by the master, we are clearly of opinion that it must be inferred from the facts reported by him that the defendants Atwill and Gage, acting for the members of their union, intended to compel the plaintiffs' employers to discharge the plaintiffs and to refuse to give to the plaintiffs any further employment; and that this was done, not for the purpose of securing for the members of the defendants' union all the work that was to be had from these employers, but to deprive the plaintiffs of employment and make it impossible for them to obtain their livelihood by their labor, unless they should become members of the defendants' union upon whatever onerous terms the latter should choose to impose.  The power and duty of the court to draw further inferences from the facts found by a master or by a single justice cannot be disputed.  *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 200.  *Rosenberg* v. *Schraer,* 200 Mass. 218.  *Knowles* v. *Knowles,* 205 Mass. 290, 294.  *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394, 397.  *Smith* v. *Kenney,* 213 Mass. 6.

The defendants did not say to their employers, "You must give us all your work or none of it," as they might have done without exceeding the limits of allowable competition.  *Pickett* v. *Walsh,* 192 Mass. 572, 584.  *Hoban* v. *Dempsey,* 217 Mass. 166.  They required their employers to refuse absolutely to employ the plaintiffs, for the purpose of putting upon the latter an unfair pressure.  In contemplation of law, they acted from malice towards the plaintiffs, and did to them an unlawful injury, by causing their exclusion from the labor market.  *Berry* v. *Donovan,* 188 Mass. 353.  *Pickett* v. *Walsh,* 192 Mass. 572, 588.  *De Minico* v. *Craig,* 207 Mass. 593.  *Hanson* v. *Innis,* 211 Mass. 301.

This case resembles in principle *Burnham* v. *Dowd,* 217 Mass. 351, and much of the reasoning of that decision is applicable here.

In view of the decisions already cited, we think it manifest

that relief from this continuing wrong can be given in equity. The main object of the bill is to protect the plaintiffs from the irreparable injury to which they are exposed by the unlawful acts of the defendants. It is only incidentally that the plaintiffs seek to recover damages for the losses already caused to them. Whether the rights that have been infringed did or did not come strictly under the definition of property rights, as we are inclined to think that they did, we do not consider that we ought to extend so far the doctrine of *Worthington* v. *Waring*, 157 Mass. 421, as to refuse relief in a case like this. The authority of that case upon this point has been doubted. *Burnham* v. *Dowd*, 217 Mass. 351, 359.

Substantial damages have been given only to the plaintiff Fairbanks. Upon the findings of the master we cannot say that he was not entitled to the sum allowed him. *Burnham* v. *Dowd*, 217 Mass. 351, 360, and cases cited. He has not however been given damages for the permanent loss of access to the labor market, and is not barred from having further relief by way of injunction.

It is too plain for discussion that neither one of the plaintiffs was required, before bringing this bill, to seek relief within the defendants' union or to exhaust any remedy that might there have been available.

The decree appealed from contains however some minor errors, which, although they have not been complained of by the defendants, yet ought to be corrected. Instead of ordering several judgments in favor of the respective plaintiffs for nominal or substantial damages, and a joint judgment for costs, the decree ought to order the defendants to pay to each plaintiff the amount found in his favor and to pay the stated amount of costs to all the plaintiffs jointly. So modified, the final decree appealed from must be affirmed, with the additional costs of the appeal.

*So ordered.*