ARMSTRONG CORK & INSULATION COMPANY *vs.* THOMAS F. WALSH & others.

Suffolk. March 5, 1931. — June 29, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Unlawful Interference. Equity Jurisdiction,* To enjoin unlawful interference. *Labor Union. Strike. Equity Pleading and Practice,* Parties, Decree.

Although the law has recognized as a legal justification for a strike, or for the exercise of pressure to compel their employment to the exclusion of others, a determination by laborers united in a voluntary unincorporated labor union to obtain for themselves all the work of a particular kind, equity will restrain the exertion, upon a corporation manufacturing and installing certain building material, by members of a labor union not employed by nor having any direct relation with such corporation, of pressure to compel employment by it of the members of such union, where such pressure is exerted through sympathetic strikes, boycotts and black listings, conspiracies to cause breaches of existing contracts for purchase and use of the corporation's product and threats of strikes directed to persons who otherwise might become customers of the corporation.

In a bill in equity by a corporation manufacturing a certain building material, the defendants named were certain persons, individually and as officers of a certain local union, "and all the other officers and members of" that union, "who are numerous and most of whom are to your plaintiff unknown, and who are fairly represented by said officers and have a common interest with them in the suit." An answer was filed on behalf of "the defendants." The record, on a reservation for determination of the suit by this court after confirmation of a master's report, did not disclose the names of those who were served with process, but it appeared that all not served and not named had a common interest in the success of the course pursued by the defendants, and were fairly represented by those named. It having been determined that the plaintiff was entitled to relief by injunction, it was *held,* that such injunction properly might be directed against those named as individuals and officers of the union in the bill, against "the members of" the union, "and each of them, their and each of their servants, agents, attorneys, confederates, and any and all persons acting in aid of, or in conjunction with them, or any of them."

The right of an individual to refuse to work for an employer on any ground pleasing to himself does not go so far as to tie the hands of a court of equity where such individual is one of several in a combination by unlawful means to prevent such employer from procuring any one to work for him.

A decree in a suit in equity is not too broad merely because it enjoins illegal action which, at the moment of the filing of the bill, the defendant has not taken, if it appears that it is action which is threatened by the defendant in words or, from action which the defendant has taken, is legitimately to be inferred as strongly probable to be resorted to by him in the pursuit of his purpose, and is within the charges of the bill.

In a suit in equity by a manufacturer of insulating cork board, which the plaintiff at times installed by employing members of a labor union of carpenters and a labor union of plasterers, against officers and members of a labor union of roofers using alleged unlawful means to compel the plaintiff to use roofers for the work, it was determined that the plaintiff was entitled to injunctive relief, and a form of decree of injunction was approved.

BILL IN EQUITY, filed in the Superior Court on March 14, 1930, and described in the opinion; the defendants named in the bill were "Thomas F. Walsh, J. J. Sullivan, Herman H. Draheim, William H. Burns, John S. Hunt and P. G. Keefe, all of Boston, in the County of Suffolk and Commonwealth of Massachusetts, individually and as they are respectively president, vice-president, secretary-treasurer, recording secretary, and business agents of Local Union No. 33 of The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, a voluntary unincorporated association, and all the other officers and members of said The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, and of Local Union No. 33, who are numerous and most of whom are to your plaintiff unknown, and who are fairly represented by said officers and have a common interest with them in the suit, all of which defendants are hereinafter referred to as 'the roofers.'"

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Cox*, J., the report of the master was confirmed. The plaintiff then moved that a final decree be entered ordering, adjudging and decreeing that the persons described in the bill as individuals and officers of the union, "the members of The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, the members of Local Union No. 33 of The United Slate, Tile and Composition

Roofers, Damp and Waterproof Workers' Association, and each of them, their and each of their servants, agents, attorneys, confederates, and any and all persons acting in aid of, or in conjunction with them, or any of them, be and hereby are specifically enjoined and restrained from:

"(1) Refusing to work on or about buildings, or to instal in, or in connection with buildings, materials furnished them because said materials are the product of the plaintiff and/or because the plaintiff is engaged, or is about to be engaged in or about, or in connection with, said buildings or any of them, and from attempting, either directly or indirectly, by threats or otherwise, to prevent the use, installation or sale of the products of the plaintiff by inducing, or attempting, or threatening to induce, any person or persons whomsoever to decline or refuse employment, or to cease employment, or not to seek employment under any person, firm or corporation, because such person, firm or corporation intends to include in the building specifications, or have purchased, or contracted, or propose to purchase or contract for, products of the plaintiff for installation in, or in connection with buildings, or because materials furnished and/or made by the plaintiff are being used, or are proposed to be used in, or in connection with, some building or buildings where said persons were doing, or about to do work, or because the plaintiff was engaged upon, or was about to be engaged upon, or its materials were being used, or about to be used, in some building or buildings where said persons were doing, or were about to do work.

"(2) Striking or abandoning work, or threatening to strike or abandon work, or refusing to work on or about buildings, in order to compel or induce employers to refrain from purchasing, contracting to purchase, or using the plaintiff's products or any of them, and/or to compel or induce the plaintiff to employ members of The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association upon their operations, or any of them.

"(3) Publishing, circulating, or otherwise communicating, either directly or indirectly, in writing or orally, to any other person, firm or corporation, any statement or notice of any

kind or character whatsoever, calling attention to the fact that the plaintiff, or its business, or its products, should not be dealt with, purchased, used, handled, or worked upon, because if such person, firm or corporation should so do, strikes or other labor trouble would ensue upon or about their buildings, and from publishing, circulating, or communicating, either orally or in writing, any representation or statement of like effect or import, for the purpose of injuring or interfering with the plaintiff's business, or with the free and unrestricted right of the plaintiff to dispose of its products and to obtain contracts for orders of merchandise made or to be made by it.

"(4) Giving notice, orally or in writing, to any person, firm or corporation, to refrain from soliciting, making or carrying out contracts with the plaintiff for merchandise to be made, or to refrain from purchasing, or attempting to purchase, materials of any sort from the plaintiff, under threats that if such contracts or purchases are made or carried out, they will cause the persons so notified loss, trouble, or inconvenience, or that they will cause persons in the employ of said persons so notified to withdraw from their employment, or that they will cause persons employed by others upon or about buildings where said persons so notified and/or the plaintiff in doing work, to withdraw from work upon or about said buildings.

"(5) Striking or abandoning work, or refusing to work, or threatening to strike or abandon work, or to refuse to work on or about buildings, or inducing or seeking to induce others to strike or abandon work, or to refuse to work, in order to compel the plaintiff to employ in any or all of its operations, members of The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, or from interfering in any way, or threatening to interfere, directly or indirectly, with the employment by the plaintiff of such craft or crafts as it elects or chooses to employ upon its operations or any of them.

"(6) Imposing or threatening to impose fines or penalties upon members of The United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association or

Unions affiliated therewith who refuse or are unwilling to join or participate in any strike, or quitting work, or refusing to do work forbidden by this decree.

"(7) From doing, or threatening to do, any and all acts and the use of any and all ways, means and methods, which acts, ways, means and methods by putting, or attempting to put, any person, firm or corporation in fear of loss or trouble may tend to hinder, impede or obstruct the plaintiff in the carrying on of its business, or to interfere with the plaintiff's business, or to hinder, impede or obstruct any person, firm or corporation from carrying out its contract with the plaintiff, or from contracting with the plaintiff, or which may tend to hinder, impede or obstruct the erection, application, installation and distribution of the plaintiff's material upon any building or buildings.

"(8) From enforcing or attempting to enforce the provisions of the votes of February 10, 1930, and March 10, 1930, and from imposing or threatening to impose fines or penalties upon any member of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association or Unions affiliated therewith who refuse or fail to abide by provisions of said votes or either of them."

The motion was heard by *McLaughlin*, J., by whose order the suit was reserved for determination by this court.

*L. A. Mayberry*, (*A. L. Brown* with him,) for the plaintiff.

*F. L. Simpson*, for the defendants.

WAIT, J. The plaintiff is a corporation engaged in manufacturing, selling, and, to some extent, installing cork board, a material used for insulation against heat and cold, which is placed upon the roofs of buildings and also in interiors of cold storage and refrigerating plants, ice houses and other places used for cold storage. The corporation has a large and valuable business, and is widely well known. It not only sells its product, leaving purchasers to instal at their pleasure, but also itself contracts for the installation and guarantees its work. For the latter purpose it has long maintained a construction crew under a trained engineer, in which the mechanics are union men belonging to the laborers', the carpenters' and the plasterers' labor unions. Except within

a radius of twenty-five miles about the city of New York it has not employed roofers in its work. This proceeding is an episode in a struggle by the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, a voluntary unincorporated labor union, which with its members will be referred to as the "roofers," to obtain as part of its "jurisdiction" all work in installing, applying, setting and distributing cork material when installed in hot asphalt or other similar plastic material.

The bill was filed on March 14, 1930. The defendants are the president, vice-president, secretary-treasurer, recording secretary and the business agents of Local Union No. 33 of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association, who are named individually, and "the other officers and members" of the association and of Local Union No. 33 who are numerous, mostly unknown to the plaintiff, but are alleged to be "fairly represented by said officers and have a common interest with them in the suit." They are referred to as "the roofers." The bill seeks injunctive relief. Answer was filed by the defendants. After hearings by a master and a report to which no exceptions were filed or taken by either party, the cause was heard by a judge of the Superior Court who reserved the case for the determination of the full court upon the pleadings, a stipulation of the parties with regard to conduct pending the proceedings, the order of reference, the master's report, the decree confirming the report, the plaintiff's motion for entry of a final decree and all questions of law, such decree to be entered, or order made, as justice and equity may require.

The master reports the following facts: For ordinary roof covering slabs of the cork board are dipped in hot asphalt and laid in place with little occasion for cutting and trimming them. For ceilings and walls of rooms, and for cold storage and refrigeration construction, much accurate cutting, trimming and fitting are called for, and the board is laid in a better grade of asphalt or in Portland cement mortar. Although hot pitch or tar is used to some extent in interior work, it is never used for installing the board in cold storage

and refrigeration work. The work is performed by carpenters where asphalt or a similar substance is used, and by plasterers if the board is laid in cement. Except within a radius of twenty-five miles of the city hall of New York city where certain men among the roofers have had special training, no roofers have been employed. In a few instances the plaintiff has employed roofers elsewhere, but with unsatisfactory results. Roofers do not customarily carry the tools nor possess the skill adequately to perform the work essential to satisfactory installation; but they could acquire tools and skill for the part of the work which they claim within a short period.

As early as 1928 the roofers claimed the work of laying cork board in hot asphalt wherever used. The work on a few jobs was given them, but was not satisfactory to the plaintiff. In January of 1930 the roofers' union made formal demand for the work and for an agreement. The plaintiff refused to make the desired agreement and was notified "that whenever said work was to be laid in hot asphalt, and other mechanics were employed to do said work, that the other mechanics be discharged and that the defendants be hired in their stead, and that if said demands were not acquiesced in by the plaintiff or other contractors, then in that event they, the roofers, would refuse to work upon any building for any contractor or subcontractor where the material of the plaintiff was being installed by any mechanics other than the roofers." Pursuant to instructions from the International Roofers Union to Local Union No. 33 to endeavor to obtain all the work of installing and applying the cork board material demanded of the plaintiff, that local voted on February 10, 1930, to refuse "to handle any product of the Armstrong Cork Company until they come to a signed agreement with our Local"; and it, forthwith, notified the Building Trades Employers Association of its refusal. Conferences on March 5 and March 7 were held without reaching an agreement. At the latter conference, the representative of Local No. 33 claimed for the roofers "All heating of asphaltic material, all brush work, spray gun system, all mopping, all setting of cork on roofs, on floors, dipping of all

cork and heating of same, and the right to determine the number of men used on each operation." A representative of the carpenters claimed "The setting of all cork in cold storage insulations, whether on roofs, walls, ceilings or floors, except where the cork is set in Portland cement"; and a representative of the plasterers claimed "The work of setting all of the cork in Portland cement." On March 10, 1930, Local No. 33 voted to stand by the action taken on February 10. Copies of the votes were sent to the Building Trades Employers Association so that members should govern themselves accordingly in making contracts for cork board insulation.

The master found that "It is the defendants' plan to obtain a monopoly of all of the work of installing and applying cork board material manufactured by the plaintiff and others engaged in a similar line of business, to the exclusion of all other crafts, wherever said material is set upon a hot asphalt base, regardless of whether it is upon the roof or the interior of a building and without regard to the character of the building upon or in which it is to be installed. The defendants further propose to refuse to handle any of the material of the plaintiff or to refuse to work upon any building for any contractor, subcontractor or owner, where the plaintiff is engaged in the installation and application of its said material with its own mechanics. The defendants also propose, and already have advised contractors, builders and owners generally that there will be labor difficulties upon their work if the plaintiff's material is used or if a contract is made with the plaintiff whereby it undertakes to furnish and erect its material, hoping thereby to induce contractors, builders and owners generally to bring pressure to bear upon the plaintiff to comply with the defendants' demands, lest its business be ruined if it neglects and refuses to do so."

In carrying out this plan certain of the defendants in the employ of the Columbia Cornice Company refused to handle material purchased of the plaintiff by, and about to be installed by, the former company on a job of the Thompson-Starrett Company, Inc., at 75 Federal Street, Boston, although none of the plaintiff's employees were, or were to be,

employed upon the work. On March 13, 1930, the defendant Keefe with knowledge and approval of the other defendants and in the course of his duties as business agent ordered defendants then employed by the Eagle Cornice and Skylight Works, to strike on a roofing job of that company as subcontractor for roofing under a general contractor for a building for the Jordan Marsh Company at Cambridge, where the roofers had no cause of complaint against the Eagle company, but where the plaintiff was doing with its own men an installation of its cork board in the interior of the building. About February 1, 1930, the defendant Keefe, having learned that the plaintiff's product was to be used in a refrigerating plant at Cambridge and that the Eagle company had the roofing contract, advised the president of the company that members of the roofers' union would not be allowed to work on the job until the plaintiff entered into a contract with the Local Union No. 33. As a result of later conferences with the president, however, the roofers were permitted to work. About the same time, the Eagle company, which had a subcontract for the roof on a hospital building at Waltham where the plaintiff's material was to be used, was notified by defendant Keefe that roofers would not be permitted to handle the plaintiff's product. As a result of conferences with the general contractor and architect, in order to avoid labor trouble and because of the position of the roofers, the product of another manufacturer was substituted for the plaintiff's, and the latter lost a contract which otherwise it would have had. Other instances were put in evidence of attempts by the defendants to interfere with the use and installation of the plaintiff's product in order to compel the plaintiff to contract with the defendants. The Eagle company's and the Columbia company's men engaged on jobs where the plaintiff was not engaged or where its product was not to be used were not called off from those jobs. Nor did defendants, members of Local No. 33, object in March, 1930, to working on a job at Newport, Rhode Island, where the plaintiff's cork was being installed.

In the circumstances thus disclosed the plaintiff is entitled to injunctive relief. Indeed while not expressly ad-

mitting its right thereto, the defendants' argument has been directed chiefly to the contention that the relief asked for in the draft decree submitted is too broad. Although the law has recognized a determination by laborers united in a voluntary unincorporated labor union to obtain for themselves all the work of a particular kind, as a legal justification for a strike or the exercise of pressure to compel their employment to the exclusion of others, *Pickett* v. *Walsh*, 192 Mass. 572, 583, *Hoban* v. *Dempsey*, 217 Mass. 166, *Burnham* v. *Dowd*, 217 Mass. 351, 356, *Shinsky* v. *O'Neil*, 232 Mass. 99, 102, it refuses to regard as legal certain methods of exerting pressure. These methods equity will restrain. The defendants here have resorted to them. They have no direct relation as employees of the plaintiff, except, perhaps, in the vicinity of the city of New York, where it gives roofers the work which they are demanding to have elsewhere. Except in that vicinity, they cannot resort to the direct strike which would be regarded as legal. Accordingly at Boston and in its vicinity they have seized upon what, in their nature, are sympathetic strikes, boycotts and black listing which are illegal. *Reynolds* v. *Davis*, 198 Mass. 294, 300. *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198. *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554. *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269. *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554. They have conspired to cause breaches of existing contracts; which was held illegal in *Berry* v. *Donovan*, 188 Mass. 353, *Beekman* v. *Marsters*, 195 Mass. 205, *Aberthaw Construction Co.* v. *Cameron*, 194 Mass. 208, *Folsom* v. *Lewis*, 208 Mass. 336, *Burnham* v. *Dowd*, 217 Mass. 351, and *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382. They have taken men away from work then being performed by employers with whom they have no trade dispute because the plaintiff's product was being used, or was to be used, upon the building where the employer was at work, or where the plaintiff itself was installing its product and doing the work with its own men; which we have held to be illegal in *Pickett* v. *Walsh*, 192 Mass. 572, *Burnham* v. *Dowd*, 217 Mass.

351, and *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45. They have given widespread notice to builders and building contractors that, until the plaintiff enters into the agreement with them which they desire, labor troubles will ensue wherever roofers are employed by others than the plaintiff and the products of the plaintiff are to be or are being installed either by others or by the plaintiff. This, too, is illegal under the principles of *Burnham* v. *Dowd*, 217 Mass. 351, *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, *Martineau* v. *Foley*, 231 Mass. 220, and *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269. Their laws authorize, as the master has found, the imposition of fines upon members who refuse to obey the injunctions of the local union, and that union has ordered pressure to be exerted on the plaintiff through the objectional methods. Such imposition may be restrained. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 71.

The record does not disclose the names of those who were served with process; but answer was made on behalf of "the defendants" and must be assumed to be on behalf of all the defendants. All not served and not named have a common interest in the success of the course pursued, and are fairly represented by those named. The injunction to be effective must apply to all, and justly applies to all, although blame for violating it may vary greatly with the individual at fault. *Baush Machine Tool Co.* v. *Hill*, 231 Mass. 30. *Martineau* v. *Foley*, 231 Mass. 220, 224.

Equity may properly enjoin certain refusal to work on behalf of individuals. The right of the individual to refuse to work for another on any ground pleasing to himself does not go so far as to tie the hands of the law where individuals are in combination to prevent that other from securing any one to work for him. Refusal in an effort to further the illegal purpose of the combination is properly restrained. *A. T. Stearns Lumber Co.* v. *Howlett*, 264 Mass. 511, 515. A refusal to work in truth and fact not connected with or induced by the furtherance of the combination hereby denounced cannot be restrained and is not within the injunction of the decree herein.

A decree is not too broad when it enjoins illegal action which at the moment of the filing of the bill the defendants have not taken, if it appears that it is action which is threatened by the defendants in words or is legitimately to be inferred from the action which has been taken by them to be strongly probable to be resorted to by them in the pursuit of their purpose, and is within the charges of the bill. *Aberthaw Construction Co.* v. *Cameron*, 194 Mass. 208, 215.

We have not dealt with the question of the creation of a monopoly or with that of interference with interstate commerce because neither seems essential to the decision of the matter now before us. Nor do we consider that the action of the National Board of Jurisdictional Awards, to which neither the plaintiff nor these defendants were parties, is material here.

It follows that the plaintiff is entitled to a decree in the form of the decree submitted.

*Ordered accordingly.*