JOHN CORNELLIER *vs.* HAVERHILL SHOE MANUFACTURERS' ASSOCIATION & others.

Suffolk.    March 1, 2, 1915. — September 15, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Master's report. *Equity Jurisdiction,* To enjoin blacklisting, Plaintiff must come into court with clean hands. *Labor Union. Boycott,* By blacklisting. *Strike.*

Where a suit in equity is referred to a master "to find the facts, and report the same to the court," no exception can be sustained to the refusal of the master to pass upon requests for rulings of law.

A combination of manufacturers of a certain commodity to blacklist the striking employees of another manufacturer of the same commodity, when directed against persons with whom those combining have no trade dispute or when the concerted action coerces the members of the combination by implied threats or otherwise to withhold employment from those whom they otherwise would employ, is on the footing of a boycott and may be enjoined by a court of equity or may afford a ground for recovering damages in an action at law   Overruling anything to the contrary in *Worthington* v. *Waring,* 157 Mass. 421.

Discussion by DE COURCY, J., of the test of the legality of strikes and their relation to labor unions.

A suit in equity against certain shoe manufacturers in a certain city, to enjoin them from blacklisting the plaintiff because he took part in a strike against another shoe manufacturer in the same city, cannot be maintained, where it appears that before and for more than three months after the filing of the bill the plaintiff has been taking part in the strike against his employer conducted by unlawful means in which the plaintiff joined that reasonably caused the average employee to be apprehensive for his personal safety; because this unlawful conduct of the plaintiff and his associates precludes him from obtaining the active aid of a court of equity and leaves him to seek redress in an action at law for any damage that he has suffered by reason of the blacklisting.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 25, 1913, against certain corporations and the members of certain partnerships engaged in the business of manufacturing shoes in Haverhill, to enjoin the defendants from interfering with the plaintiff's right to earn a livelihood, from the use of all black lists or other lists or devices containing the name of the plaintiff, for the assessment of damages and for further relief.

The case was referred to Arthur P. Hardy, Esquire, as master, "to hear the parties and their evidence, to find the facts, and report the same to the court." He filed a report in which he found the facts that are stated in the opinion. Exceptions to this report were filed by the plaintiff and also by the defendants.

The case was heard by *Loring, J.*, who made an interlocutory decree sustaining certain of the defendants' exceptions, as stated in the opinion. The case then was recommitted to the master, who filed a supplemental report, and later was heard by *Loring, J.*, upon the defendants' exceptions to the master's supplemental report.

The single justice reported the case for determination by this court as follows:

"This case came on to be heard before me on the exceptions taken by the defendants to the master's report.

"It appears from the master's report that on Thursday, December 12, 1912, the employees of the Witherell and Dobbins Company struck, after the increase in wages asked for by them had been granted, because that company refused to deal with the persons chosen by the employees to represent them in making the agreement for the increase in wages, which the company was ready to concede.

"I am of opinion, and I rule, that a strike by union employees for the purpose of being represented in negotiations between them and their employer by the agents they have chosen to select for that purpose, viz., officers of the union, is a legal strike. In my opinion such a strike does not come within *Berry* v. *Donovan*, 188 Mass. 353, and *Plant* v. *Woods*, 176 Mass. 492.

"On the next day, Friday, December 13, 1912, the defendant employers of labor in the same city with the Witherell and Dobbins Company entered into a combination to resist that strike, which, as I have said, was a strike by employees for the purpose

of being represented by union officials in their dealings with their employer.

"On Monday, December 30, 1912, a general strike was instituted by the employees of shoe shops in Haverhill (in addition to the employees of the Witherell and Dobbins Company) to aid the strike by the employees of the Witherell and Dobbins Company in carrying out the purpose for which they struck, namely, to be represented in dealings with their employer by the agents which they had chosen to select, namely, union officials.

"Referring (1) to the strike by the employees of the Witherell and Dobbins Company on December 12, and (2) to the general combination of the defendant employers of labor in shoe shops in Haverhill of December 13, and (3) to the general strike of December 30 by employees in Haverhill shoe shops, the master found 'that this was a struggle between the manufacturers, on the one hand, to deal with their employees as they saw fit without the intervention of the union, and the demand of the union, on the other hand, for recognition to the extent hereinbefore described; and both parties recognized it as such from the beginning.' The question to be decided is whether that struggle which in fact took place was a legal or an illegal struggle.

"I am of opinion, and I rule, that the purpose of the Witherell and Dobbins strike was not a purpose confined to the employees of the Witherell and Dobbins Company, or to the individual employer in that strike (the Witherell and Dobbins Company), but was (1) a purpose common to employees of other persons who might think it to be for their advantage to have employees, in dealing with their employer, represented by union officials; and (2) a purpose common to other employers who might think it to be for their advantage not to have employees, in dealings with the employer, represented by union officials.

"I therefore rule that the combination of the defendant employers to aid Witherell and Dobbins in resisting the strike of their employees by refusing to employ the striking employees of the Witherell and Dobbins Company was a legal combination, and not a boycott by way of a black list; and I also rule that the general strike by employees of shoe shops other than that of the Witherell and Dobbins Company was a legal strike, and not il-

legal within *Pickett* v. *Walsh,* 192 Mass. 572, as a sympathetic strike to aid in a trade dispute of a third person.

"If these rulings are correct, the plaintiff cannot complain of the defendants' refusing to employ him either before or after the general strike; the defendants were justified in refusing to give the plaintiff employment, because they had entered into a legal lockout as against the plaintiff.

"There is an additional reason why the plaintiff cannot recover for loss of employment after the general strike which began on December 30, 1912, and this reason would obtain even if the employers' combination of December 13 was an illegal one. An employee who is prevented from getting employment by an illegal black list of employers has two courses of action open to him. First, he can sue for any damages suffered by him, caused by the illegal combination of employers in blacklisting him, or, second, he can become a party to a general strike against all the employers who are parties to the black list. But he cannot do both. If he becomes a party to a general strike against all employers who are parties to the black list, he cannot complain that he is damaged by not being employed by the very persons for whom, by being a party to the general strike against them and others, he has refused to work.

"It is apparent that if my rulings are correct the bill should be dismissed, apart from the correctness or incorrectness of the defendants' exceptions to the master's report, and for that reason I have not considered them. But if these rulings of law are not correct, those exceptions should be considered.

"Under these circumstances I order that a decree be entered confirming the master's report and dismissing the bill of complaint, and I report the case for the consideration of the full court under R. L. c. 159, § 27, or § 29."

The case was argued at the bar in March, 1915, before *Rugg,* C. J., *Braley, De Courcy, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices except *Loring,* J.

*F. W. Mansfield,* for the plaintiff.

*J. J. Feely,* (*R. Clapp* with him,) for the defendants.

DE COURCY, J.  1. The defendants filed eighty-five exceptions to the original report of the master. The sustaining of the forty-fourth and eighty-fifth rendered necessary a re-committal

for the purpose of hearing further evidence. The supplemental report is a re-draft of the original one, with certain parts eliminated in consequence of the rulings of the single justice sustaining some of the exceptions, and with the additional findings made on the new evidence. To the supplemental report the defendants filed forty exceptions, and these have come before us without any action thereon by the single justice.

We have considered the large number of objections made and the arguments thereon, and have come to the conclusion that all of the exceptions to the original report, except those sustained by the single justice, and all of those taken to the supplemental report, must be overruled. It would serve no useful purpose to discuss them in detail. Those that deal with the admission and rejection of evidence disclose no reversible error. The findings of fact cannot be reviewed because the evidence has not been reported; and the facts found are relevant to the issues in the case, as clearly stated by the master when dealing with the several objections to his draft reports. The exceptions that relate to the master's refusal to pass upon requests for rulings of law cannot be sustained, because it was the master's duty to find the facts only, and not to rule upon their legal effect.

2. The basis of the plaintiff's complaint is that the defendants conspired against him, and by means of a black list procured his discharge from employment. On December 12, 1912, the plaintiff, with thirty-nine other employees of the Witherell and Dobbins Company, went out on strike. He secured employment at the factory of Charles K. Fox, Inc., on December 14, began work on December 16, at 7.10 A.M., and was discharged in a summary and unusual manner about two hours later. The master finds that the cause of his discharge was the fact that he was one of the striking employees of the Witherell and Dobbins Company, and that there existed a tacit understanding, to which the Fox Company was a party, that those striking employees should not be employed. It appears that on the day of the strike, or the day after, and at the request of the defendant Child (who was the manager of the Shoe Manufacturers' Association), Mr. Dobbins brought to a meeting of the manufacturers several lists containing the names of the employees who had gone on strike. Copies of the list were prepared and circulated by the defendants for the

purpose of preventing the strikers from getting work in Haverhill and vicinity, and of forcing them to abandon the strike and return to work at the Witherell and Dobbins Company's factory against their will. The acts of the several defendants in furtherance of this combination need not be recited. The master specifically has found that Cornellier was discharged at Fox's because of this "black list." It may be said in passing that of the twenty defendants named in the bill the master finds that only the following (herein referred to as the defendants) were responsible for the acts complained of, namely, the Haverhill Shoe Manufacturers' Association, the Witherell and Dobbins Company, Gale Shoe Manufacturing Company, Charles K. Fox, Inc., Austin H. Perry, Ira J. Webster, Alwyn W. Greeley, Albert M. Child, George W. Dobbins and H. L. Webber.

Did this combination of the defendants to blacklist the striking employees of the Witherell and Dobbins Company, resulting in the discharge of and damage to the plaintiff, give him a legal cause of action? The statement of the general right of the Fox Company to terminate a workman's employment when and for what cause it chooses, where no right of contract is involved, does not carry us far. See *Coppage* v. *Kansas*, 236 U. S. 1. The same is true of the recognized equal rights of employers and employees to combine in associations or unions, so long as they employ lawful methods for the attainment of lawful purposes. See *Hoban* v. *Dempsey*, 217 Mass. 166. But it is settled that the intentional interference by even an individual, without lawful justification, with the plaintiff's right to have the benefit of his contract with his employer would be an actionable wrong. *Berry* v. *Donovan*, 188 Mass. 353. *Hanson* v. *Innis*, 211 Mass. 301. A combination to blacklist is the counter weapon to a combination to boycott, and is open to similar legal objections, when directed against persons with whom those combining have no trade dispute, or when the concerted action coerces the individual members, by implied threats or otherwise, to withhold employment from those whom ordinarily they would employ. See *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, and cases cited.

It is true that in *Worthington* v. *Waring*, 157 Mass. 421, this court refused to enjoin the defendants from making use of a black list, stating that the rights alleged to be violated were personal

and not property rights, and that there were no approved precedents in equity for issuing an injunction against the grievance there complained of. In the light of more recent decisions of the court recognizing that the right to labor and to its protection from unlawful interference is a constitutional as well as a common law right there appears to be no sound reason why it should not be adequately protected under our present broad equity powers. As intimated in *Burnham* v. *Dowd*, 217 Mass. 351, 359, the case of *Worthington* v. *Waring* cannot well be reconciled with our later decisions. It must be considered as no longer binding as an authority for the doctrine that equity will afford no injunctive relief against an unlawful combination to blacklist.

It should be added that St. 1914, c. 778, was enacted after the events in controversy and has not been considered. Nor, on the facts, have we had occasion to determine how far the "peaceful persuasion" statute (St. 1913, c. 690) permits one·employer to advise another not to employ his striking employees. In several States legislation has been enacted to prevent blacklisting; and most of the decisions deal with the validity or construction of the different statutes. See Labor Laws of the United States, Bureau of Labor Statistics, Bulletin No. 148; Labor Decisions, 1912, Bulletin No. 112; *Ibid*, 1913, Bulletin No. 152.

3. The single justice ruled that "the combination of the defendant employers to aid Witherell and Dobbins in resisting the strike of their employees by refusing to employ the striking employees of the Witherell and Dobbins Company was a legal combination, and not a boycott by way of a black list." Without now considering the correctness, as abstract legal propositions, of the rulings as to the legality of a general strike to secure recognition of the union in a particular shop, and of a combination of employers as a retaliatory measure, we are of opinion that the master's report does not sustain the conclusion of fact on which apparently the rulings were based, namely, that the black list was instituted after and to resist a general strike and that the Witherell and Dobbins strike was in effect a general one. On this point the chronology of the events in the case seems decisive. The strike at Witherell and Dobbins Company's factory took place on December 12, 1912. On the following day, December 13, a meeting of the shoe manufacturers was called by the association, Mr. Dob-

bins told them about the strike at his factory, and some of the lists of striking employees were distributed to those manufacturers who asked for them. On December 16, the plaintiff and one Cormier, whose name also was on the list, were discharged from the Fox Company's factory. The general strike of the shoe cutters in twenty-two of the sixty-five or seventy factories was not called until December 30 and was not contemplated when the original strike occurred on December 12. And as the master expressly finds, "the existence of the black list was generally known, and this undoubtedly operated as one of the elements which induced the men to give Oldham authority to call the [general] strike, and actuated them to come out after the strike had been called."

4. Assuming that, if this were an action at law, the plaintiff could recover for the damages caused by the unlawful combination of the defendants to blacklist him, the question remains whether he is entitled to prevail in the present suit. He has brought these proceedings in a court of equity. Under the established maxim that "he who comes into equity must come with clean hands," the court will not lend its active aid to him if he has been in equal wrong with the defendants touching the transaction as to which relief is sought, but will leave him to his remedy at law. The strike at the Witherell and Dobbins factory in which he joined is intimately connected with the black list of which he complains. The plaintiff individually was free, under his contract at will, to terminate his employment for any reason that he deemed sufficient. He had an undoubted right to join a labor organization. The employer as an individual had similar rights. But while each had a right to organize with others, it by no means follows that the organizations lawfully could do everything that the individual could do. See *Martell* v. *White*, 185 Mass. 255, 260; *Pickett* v. *Walsh*, 192 Mass. 572, 582. An act lawful in an individual may be the subject of civil conspiracy when done in concert, provided it is done with a direct intention to injure another, or when, although done to benefit the conspirators, its natural and necessary consequence is the prejudice of the public or the oppression of individuals. 5 R. C. L. 1093.

Without discussing the conflicting authorities in other jurisdictions, in this Commonwealth, in the present stage of the in-

dustrial controversy, the principle is defined that the legality of a strike depends first upon the purpose for which it is maintained, and secondly on the means employed in carrying it on. As to the first, it is no longer in question that organized labor lawfully may strike for higher wages, shorter hours, and improved shop conditions. *Minasian* v. *Osborne*, 210 Mass. 250, and cases cited. On the other hand it has been decided that a strike instituted merely to compel a closed shop would not be justifiable on principles of competition, but would be unlawful. *Reynolds* v. *Davis*, 198 Mass. 294. *Folsom* v. *Lewis*, 208 Mass. 336. In the debatable ground between these extremes the conflict of rights must be adjusted as new conditions arise. And the question whether any particular strike is lawful is a question of law. *DeMinico* v. *Craig*, 207 Mass. 593. *Burnham* v. *Dowd*, 217 Mass. 351, 356.

What, then, was the purpose of the Witherell and Dobbins strike? The master has found that it was instituted and maintained for the reason that the company, although willing to grant the request for an increase of wages, was unwilling to make an agreement as to prices with or through the union or its representatives; and the employees were unwilling to make such an agreement except through the union or its representatives. Plainly it would not be unlawful for the men to combine to secure an experienced spokesman for their collective bargaining, and to select an outsider in order to avoid future criticism from the employer or fellow employees. Further, the fact that the person they select to speak for them, and to act personally as their agent in presenting the proposed price list to their employer, happens to be an official of the union would not render unlawful a strike called to enforce their demand. Apparently that is as far as the employees of the Witherell and Dobbins shop went. The master expressly finds that "The price list did not contain any provision that the union must be recognized, or make any stipulation as to the employment of union or non-union labor, and no such demand was made." Not all the men who went on strike were members of the union. Later there developed, what probably was latent from the beginning, a struggle between the manufacturers to deal with their employees as they saw fit and the union to secure recognition. As a practical matter it might be difficult to find a permanent position where the union would rest content with a degree

of "recognition" that allowed it to represent its members without interfering with the rights of their non-union fellow workmen and virtually forcing them to join the organization. But so far as the record and the findings of the master disclose, the strike in question did not contemplate the discharge of non-union men, and was not immediately or remotely a strike for a closed shop. On the facts appearing in the record we cannot say that the combination to strike at the Witherell and Dobbins shop was for an unlawful purpose, any more than a similar combination of employers for non-recognition of the union would be.

It is clear from the findings of the master, however, that the Witherell and Dobbins strike was conducted by unlawful means; that laws were violated and the well established rights of others invaded. On several occasions crowds of strikers paraded in front of the factory, cheering and shouting "Come out," and occasionally adding the names of men who remained at work; once at least one hundred or more paraded in front of the factory, two by two in one direction and two by two in the opposite direction, so that there were four persons abreast most of the time, and the operatives leaving the factory had difficulty in breaking through the line. Some of the employees were intimidated and followed by crowds, others had to be escorted home by police officers, and four or five were assaulted by strikers or their sympathizers because they took the place of striking employees. One serious attack, characterized by the master as cowardly and unprovoked, was made on an employee named Mills, as he was going home after dark at the conclusion of his day's work. And while the persons who committed the assaults were not identified, the union and its officials made no effort to stop or control them; and the union men who were present when Mills was assaulted and rendered unconscious made no effort to give any aid or to pursue the man who struck the blow. The strike was carried on in a manner that reasonably caused the average employee to be apprehensive for his personal safety. The plaintiff cannot avoid responsibility for some, at least, of these acts. The strike, which was pending for more than three months after the bill was filed (as well as the "general" strike), was maintained under the direction of the union to which he belonged, and for the recognition of which he went on strike. He took part in the picketing and

in at least one of the parades, and otherwise aided and encouraged it. See *Lawlor* v. *Loewe,* 235 U. S. 522.

The conduct of the plaintiff and the acts of others with whom he was legally identified preclude him from obtaining the active aid of a court of equity. For any damage caused by the black list which the defendants maintained he must seek his redress, if any, at law. Accordingly it becomes unnecessary to consider the effect upon his rights of his participation in the general strike of December 30, and the further questions, whether that strike was for a lawful or an unlawful purpose, and whether it was conducted by lawful or unlawful means.

For the reasons herein set forth a decree is to be entered overruling the exceptions, confirming the master's report, and dismissing the bill of complaint.

*Decree accordingly.*