DENSTEN HAIR COMPANY *vs.* UNITED LEATHER WORKERS INTERNATIONAL UNION OF AMERICA & others.

TANNERS PRODUCT COMPANY *vs.* SAME.

Essex.  November 18, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Labor.  Strike.  Unlawful Interference.*

A manufacturer may maintain a suit in equity against an incorporated labor union and several of its officers and employees who were conducting a strike in the plaintiff's factory, to enjoin "the defendants and each of them, their agents, servants, confederates and associates and all persons acting for or in behalf of them or any of them" from "interfering or attempting to interfere with the plaintiff's business, by preventing persons from entering into or continuing in the employ of the plaintiff through means of threats, violence, or intimidation," from establishing a boycott, or placarding, posting or picketing against the plaintiff as "unfair" to union labor, and from representing to persons conducting lodging and boarding houses, to which persons employed by the plaintiff in the places of the strikers resorted, that the plaintiff was "unfair" to union labor, although the strike, in behalf of which the acts enjoined were performed, when begun was legal because undertaken for the lawful purpose of securing an increase in the employees' wages which had been refused by the plaintiff.

TWO BILLS IN EQUITY, filed in the Superior Court on April 1, 1920, each against the same incorporated labor union and some of its officers and agents, to enjoin unlawful interference on the part of the defendants with the plaintiff's business.

The suits were referred to the same master and were heard together by him.  Material findings by the master are described

in the opinion. His report was confirmed, and the suits were heard by *Lawton*, J., by whose order a final decree was entered in each case enjoining "the defendants and each of them, their agents, servants, confederates and associates and all persons acting for or in behalf of them or any of them.

"1. From interfering or attempting to interfere with the plaintiffs' business, by preventing persons from entering into or continuing in the employ of the plaintiffs through means of threats, violence, or intimidation;

"2. From injuring or attempting to injure the plaintiffs' business by holding the plaintiffs up to the public as 'unfair' to organized labor, by causing persons dealing with the plaintiffs or who are likely to deal with the plaintiffs in the normal course of business, to cease doing so through fear of loss or damage to themselves, and from in any way establishing or maintaining a boycott against the plaintiffs or their products;

"3. From representing to persons conducting lodging or boarding houses in the vicinity of the plaintiffs' plant that the plaintiffs and that persons now employed by or seeking employment with the plaintiffs are 'unfair' and from in any way causing the keepers of lodging or boarding houses to refuse to deal with the plaintiffs or their employees in the ordinary course of business, through fear of loss or damage if they did so.

"4. That the defendants and their agents, associates and confederates as aforesaid be and hereby are restrained and enjoined from parading in the immediate vicinity of the plaintiffs' plants in Peabody, from maintaining a patrol in front of or near said plants, and from maintaining banners in front of or near the said plants, representing that a strike exists in said plants, or that the employers at said factories are 'unfair,' and from in any way intimidating or annoying or molesting employees or persons coming upon the premises to deal with the plaintiffs."

The defendants appealed from the final decree.

*J. W. Sullivan,* for the defendants.

*S. Parsons,* (*A. G. Wadleigh* with him,) for the plaintiffs.

PIERCE, J. In each of these suits, filed April 1, 1920, the plaintiffs severally seek to have the defendants enjoined from interference with their business. The cases upon reference were heard together by a master, who made a report to which no exceptions

were taken and which has been confirmed. The report was heard by a judge of the Superior Court, who entered a final decree in favor of the plaintiffs. From that decree the defendants appealed and the cases are before this court on the question whether upon the facts found by the master the decree is justified by the bill and record. *French* v. *Peters,* 177 Mass. 568. *Gordon* v. *Borans,* 222 Mass. 166.

Taken from the master's report, succinctly stated the facts and events which preceded the day when there was a strike or discharge of the employees are in substance as follows: The plaintiffs are manufacturers using as a part of their raw material by-products of the leather industry. The defendant Local No. 10 was organized in the early summer of 1919 among the employees of the two plaintiff corporations and the employees of two glue factories. After the organization a demand was made upon the plaintiffs for forty-eight hours labor per week instead of fifty-five hours without reduction of the weekly wage. This demand was granted, beginning July 13, 1919. Soon a demand was made by the union for fifteen per cent increase in wages. After a strike of two weeks, in July and August, this demand was compromised. The organization of the employees did not involve a closed shop in either factory, and no formal demand was made for a closed shop. The rate of wages was fifty cents per hour. On January 12, 1920, a written demand by registered letter was made in behalf of Local No. 10 upon each plaintiff for an increase of fifteen per cent in wages. This letter was answered by neither of the plaintiffs. A similar demand was made on each of the two glue factory corporations, and settlements with these corporations were reached. Following that settlement, on January 30, 1920, the union wrote a letter to each plaintiff seeking an appointment of a time and place to confer on the request for an advance in wages contained in its letter of January 12. No reply to this letter was sent by either plaintiff. On Wednesday evening February 18, 1920, Local No. 10 held a special meeting to discuss matters concerning an increase in wages in both the Tanners Products Company and the Densten Hair Company. The record of the meeting is as follows:

"A motion was made that a vote be taken to strike, or else they consider the terms Mr. Densten made of less than 5% increase.

The motion was seconded that a strike vote be taken. Motion carried. An Australian ballot was cast and a strike voted on by a majority of 146 to 3. Strike to be sanctioned by Friday noon-time. Notice to go out to be given employees by business agent or general organizer on Friday. Meeting adjourned at nine o'clock."

The action of the local board was sanctioned by the national executive board on February 19, 1920, and notice thereof was immediately given the employees of the plaintiffs by John J. McGuinness, the national grievance agent. No notice of the intended strike was given to either plaintiff. The employees did not intend to walk out during Thursday, but did intend to remain away from work on Friday morning. On Thursday both employers learned from common report of the vote of the employees of Wednesday evening in favor of a strike. At closing time of Thursday, both employers assembled their employees in their respective factories, and announced that the factory would close that night and open again on the following Monday; that those who were satisfied with present wages might return, and those who were dissatisfied were discharged. No wages were paid to the employees at that time and none were demanded.

As respects the action of the employees, the master finds that they "did not intend to return to work next day, and that their attitude and belief is that they are on strike against the plaintiffs for an increase of wages . . . that the only demand made was for an increase in wages, and that there was no implied requirement that the plaintiffs should conduct closed shops."

The master also specifically finds "that the plaintiffs have obtained a substantially complete working force and are not desirous that the former union employees shall return; and that after the closing of the factories on February 19 they made no attempt to procure the return of the old employees."

We assume in favor of the defendants, as did the master and the judge in the Superior Court, that the "discharge" of the men was not intended nor understood to be a complete severance of the relation between the employers and their employees, but was a means adopted by the employers to counteract the force of the strike which they knew was scheduled to take place the following morning. We also assume in favor of the defendants that

the "mass" action of the employees at its inception was legal because it was taken with a lawful purpose to force the employers to raise the wages of their employees as they had been requested to do, and as they, at least impliedly, had refused to do.

The question argued by the defendants, whether a strike instituted for a lawful purpose can be determined and made illegal, without the knowledge and consent of the striking employees, by filling their positions with permanent new employees, upon the facts of these cases is a moot question, which calls for no decision because the acts of the defendants were illegal even if the strike continued until the filing of the bill and the entry of the final decree. See *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394. The illegal acts of the defendants in aid of the strike and of those persons and unions that were induced and persuaded by the defendants to act in sympathy with the efforts of the defendants, as found by the master consisted of picketing, the throwing of a snowball with a stone in it against the windshield of a truck of one of the plaintiffs, and the intimidation of employees of the plaintiffs by the use of unpleasant language spoken to them, by the throwing of stones at them and by jostling and crowding them, as such persons went to and from their work. *Folsom Engraving Co.* v. *McNeil,* 235 Mass. 269. It results that the decree is affirmed with costs.

*Ordered accordingly.*