Town House Inc. of Boston *vs.* John C. Hurley & others.

Suffolk. March 8, 9, 1950. — April 5, 1950.

Present: Qua, C.J., Lummus, Ronan, Wilkins, & Counihan, JJ.

*Labor and Labor Union. Picketing. Unlawful Interference.*

Peaceful picketing of a restaurant by a labor union for the purpose of compelling the proprietor to discharge nonunion bartenders and waitresses and to employ only union bartenders and waiters when the restaurant reopened after having been closed for more than two months for extensive repairs was unlawful and properly was enjoined where it appeared that before the closing of the restaurant eleven members of the union had been employed there as bartenders and waiters; that shortly after the closing the proprietor notified six of them to seek employment elsewhere, but was willing to rehire the other five, to work with nonunion employees, upon reopening of the restaurant; that upon its reopening the union prevented the five from taking employment there; and that all the employees then hired were nonunion: because no member of the union was in the employ of the proprietor upon the reopening, the picketing was not justified by the doctrine that a union may properly demand that all of an employer's work of a particular kind be given to members of the union where part of it is being performed by them.

Bill in equity, filed in the Superior Court on September 26, 1949.

The suit was heard by *Donnelly*, J.

*F. W. Mansfield*, (*J. J. Moran* with him,) for the defendants.

*J. Kirle*, for the plaintiff.

Ronan, J. This is a bill in equity brought against certain officers as representatives of the members of a trade union known as Bartenders' and Hotel Employees' Local #34 of Hotel and Restaurant Employees' International Alli-

ance and Bartenders' International League of America, A. F. L., hereinafter called the union, to restrain its members from interfering with the plaintiff in conducting its restaurant, and to enjoin them from picketing the plaintiff's premises. The defendants appealed from a final decree enjoining such picketing.

We have a transcript of the evidence and a report of the material facts found by the judge. It is our duty to examine the evidence, to accept as true the findings of the judge unless they are shown to be plainly wrong, and to decide for ourselves all questions of fact, law, and discretion. The plaintiff purchased a restaurant business on April 1, 1949, and continued the business under its former name of Town House, retaining such employees as were working there on April 1, 1949, until the plaintiff closed the restaurant on July 1, 1949, for the purpose of making extensive repairs. At the time it closed there were among its employees two bartenders and nine waiters who were members of the union and who had done all the bartending and waiting on table since the plaintiff had conducted this restaurant. Shortly after it closed the plaintiff notified by letter all of the waiters but three that it had new plans for conducting its business when it resumed in September and suggested that they seek employment elsewhere, and in the case of one waiter suggested that if he was unable to secure satisfactory employment he could see the plaintiff's manager during the last week in August. Two bartenders and three waiters were given the opportunity of returning to work when the restaurant opened in September. The plaintiff did not intend to hire more than three waiters and intended to have the rest of the work of waiting done by waitresses. The union did not include waitresses in its membership. The wages paid to waitresses were much lower than those paid to waiters. The union became apprized early in September, 1949, of the plaintiff's plans to hire waitresses, and a series of conferences followed between representatives of the union and of the plaintiff, the latter taking the position that it desired to have some of the waiting done by waitresses and the union in-

sisting that all the waiting should be performed by its members. The plaintiff reopened its restaurant on September 22, 1949, with three bartenders and twenty-one waitresses, none of whom was a member of the union. No waiters were then or have been since employed. The two bartenders and three waiters whom the plaintiff's manager intended to rehire were prevented by the union from accepting employment from the plaintiff. The union commenced to picket the restaurant when it reopened and continued to do so until it was enjoined. The pickets carried sandwich signs which stated that the members of the union had been locked out by the plaintiff. The pickets stated to passers-by that the plaintiff was unfair to organized labor. The picketing was conducted in an orderly and quiet manner by no more than four pickets at any time who walked in single file.

At the time the restaurant reopened and since, the plaintiff has employed a head waiter and a captain, so called, both of whom were members of the union. The plaintiff's manager, one Macriss, and the head waiter had recruited a staff of waitresses. There was evidence that the duties of a head waiter and a captain differ from those of a waiter, and that these persons act as a part of the managerial staff. At the hearing the parties did not regard them as waiters, and neither did the judge. The suit was not tried upon any theory that they were. We therefore lay to one side the fact that these two members of the union were employed by the plaintiff. We take the case as presented by the parties and confine our discussion to the questions raised by the defendants.

The bartenders and waiters belong to the same union. The plaintiff was willing to hire all union bartenders and also some union waiters and also some waitresses. The dispute arose from the refusal of the plaintiff to hire all union waiters and no waitresses. The defendants therefore press the argument that, all nine waiters or at least three of them being still in the plaintiff's employ when the restaurant reopened, the union had the right to demand that, having a part of the work of waiting on the table, all of this work should be

given to the members of the union, and that, upon the refusal
of the plaintiff to hire all union waiters, the union had the
right to resort to picketing to enforce its demand.   It has
long been settled that the members of a union engaged in
performing a part of their employer's work may demand
that all of that particular kind of work shall be given to
members of the union, and that a strike to secure all of this
work is a strike for a lawful purpose.   *Pickett* v. *Walsh*, 192
Mass. 572, 584.   *Burnham* v. *Dowd*, 217 Mass. 351, 356.
*Fairbanks* v. *McDonald*, 219 Mass. 291, 297.   *W. A. Snow
Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 388.   *Reeves*
v. *Scott*, 324 Mass. 594, 598–599.

This contention of the defendants is not supported by the
facts.   It is clear that the notice sent in July to the six
waiters to seek employment elsewhere than at the plaintiff's
restaurant when it reopened terminated whatever relation
of employee and employer might have existed at that time.
The two bartenders and three waiters never did any work
for the plaintiff at their craft after the closing of the restau-
rant on July 1, 1949.   Macriss had told them when the
restaurant closed that if they wanted to come back he would
have jobs for them.   But they could not accept the jobs
when the restaurant was ready to reopen and their jobs were
filled by others than members of the union.   The defendants
attack the finding that Macriss was willing up to the time
of the opening to rehire these five persons who had been
notified that they were eligible for reëmployment upon the
reopening of the restaurant.   An examination of the evi-
dence does not show that this finding is plainly wrong.
These five persons had not become employees of the plain-
tiff at the time of the reopening.   This is not a case, like
*Densten Hair Co.* v. *United Leather Workers International
Union of America*, 237 Mass. 199, or *Mengel* v. *Justices of
the Superior Court*, 313 Mass. 238, where an employee quit
his work to join a strike against his employer and where it
was found that this did not terminate his status as an em-
ployee.   Here the five persons in question had no work to
leave.   This brings us to a distinction between this case and

*Pickett* v. *Walsh*, 192 Mass. 572. The doctrine of *Pickett* v. *Walsh* applies to a case "where the strike was inaugurated for the sole purpose of getting all the work on a particular job for members of the union *who already had obtained a part of it*,"[1] as was said in *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269, 277–278, in distinguishing a strike brought for that purpose from one brought to secure a monopoly of the labor market and "to force employers to deal only with union men." The doctrine of *Pickett* v. *Walsh* is inapplicable as no union bartenders or waiters were performing any part of the plaintiff's work for more than two months before the present controversy arose. The justification for the picketing, which rested solely upon a misapplication of the doctrine of *Pickett* v. *Walsh*, therefore fails.

The judge found that no members of the union were in the employ of the plaintiff as bartenders or waiters at the time the restaurant reopened or have been since, that the bartenders and waitresses now in the employ of the plaintiff have no controversy with the plaintiff regarding the terms and conditions of their employment, that the sole purpose of the picketing is to compel the plaintiff to replace the bartenders and waitresses with members of the union so that all of the work of this nature will be performed by members of the union, and that the picketing is for an illegal purpose. Here there was no concerted cessation of work and consequently there was no strike. *Boylston Housing Corp.* v. *O'Toole*, 321 Mass. 538, 553. The legality of the object that these defendants were seeking to accomplish is to be determined by the principles governing the legality of a strike. The purpose for which a strike is commenced and maintained is a question of fact, *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, but when the purpose is discovered then a question of law arises as to the legality of the strike. *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, 562. "Findings as to the de-

---

[1] Italics supplied.

sign, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them." *United States* v. *Yellow Cab Co.* 338 U. S. 338, 341. *National Labor Relations Board* v. *Pittsburgh Steamship Co.* 337 U. S. 656, 659. The findings in the instant case which we have just mentioned are not shown to be plainly wrong and cannot be set aside. The conclusion is inevitable that the defendants were acting in concert to compel the plaintiff to comply with their demand which would necessitate the discharge of the nonunion bartenders and waitresses and replacing them with members of the union. Concerted conduct directed to accomplish this purpose is unlawful in this Commonwealth. *Burnham* v. *Dowd*, 217 Mass. 351, 357. *Goyette* v. *C. V. Watson Co.* 245 Mass. 577, 596. *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, 500–501. *Davis Brothers Fisheries Co. Inc.* v. *Pimentel*, 322 Mass. 499, 504.

There was no lock out of the members of the union. The pickets carried sandwich signs with one sign in front of them and another behind them stating that the bartenders and waiters had been locked out. That statement was false, and they had no right to display such a sign. *Olympia Operating Co.* v. *Costello*, 278 Mass. 125. But the principal ground for enjoining the picketing is that it was unlawful in aid of an unlawful labor objective. *Simon* v. *Schwachman*, 301 Mass. 573, 577. *Quinton's Market, Inc.* v. *Patterson*, 300 Mass. 315, 318–319. *Fashioncraft, Inc.* v. *Halpern*, 313 Mass. 385, 388–389. *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, 501.

The final decree is affirmed with costs.

*So ordered.*