*Southern District*

**FRANK W. MORAN, dba
FRANK W. MORAN, REALTY**

**v.**

**WILLIAM BATES
and
SOUTH SHORE NATIONAL BANK, TRUSTEE**

*Present*: Cox, J. (Presiding) & Murphy, J.
Case tried to *Taylor, J.* in the District Court of
East Norfolk (Quincy). No. 24272.

*Murphy, J.* This case is before us on an Agreed Statement of Facts as follows:

"On September 14, 1962, Frank W. Moran, a Realtor, of Holbrook and Angelo D. Spirito, an Attorney, were on their way to Cape Cod. Moran asked Spirito to wait for him while he visited William Bates at Bates' store known as Bill's Variety in Holbrook. Moran entered the store and talked to Bates while Attorney Spirito remained in the auto outside for about 15 minutes. Moran prepared this contract, copy of which is attached to his declaration in this case. Moran called Spirito into the store and Moran and Bates signed the contract in the presence of Spirito. Attorney Spirito did not read the contract or advise either person concerning the same and he was in no way involved in the *negotiations* prior to the execution of the contract. In fact William Bates owned no realty situated at #79 Union Street in Holbrook, Massachusetts. He rented a small building there and carried on a business of a light grocery and sale of beer and wine under the name of Bill's Variety.

No written notice terminating the contract set forth below was given by William Bates after *November* 1, 1962.

In December 1962, unknown to Moran, Bates sold his grocery, beer and wine business to Peter Mihos for $5500.00".

The alleged contract, in typewritten form, with its insertions in ink reads, as follows:

CONTRACT:

To (Frank W. Moran, Realty)

Date (9-14-1962)

For and in consideration of one dollar, the receipt of which is hereby acknowledged (I) hereby appoint you exclusive agent to make sale of the real property herein described as (79 Union Street, Holbrook, Mass., Bill's Variety) for the price of ($7,000.00) upon the following terms ($        ) case ($        ) secured by a mortgage thereon for (        ) years at (        ) percent, and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for the sale on (*our*) behalf.

In case the above-described property is sold or disposed of within the time specified (I) agree to make the *purchase* a good and sufficient quitclaim deed to the same and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale (ten) percent, commission on the above price and (ten) percent of all the consideration for which said property is sold over and above price above specified, and in case said property is sold within said time either through (*ourselves*) or any other person, then in that case promise to pay you (        ) percent on the whole amount for which said property may be sold.

This contract is to continue until (11-1-1962) and thereafter until terminated by (*me*) giving unto *you* as agent (3) days notice in writing.

Signed    (H. William Bates)
Signed    (Frank W. Moran)
Witnesses (Angelo D. Spirito)
           (to both signatures)

The court found for the plaintiff for $550 plus interest from December 12, 1962.

■ We treat this as a case stated. In a "case stated" requests for rulings have no standing. The appeal is from the finding of the court. *Harvard Trust Company v. Racheotes,* 337 Mass. 73; *Associate Discount Corp. v. Gillineau,* 322 Mass. 490.

The question before us is whether the finding was permissible on the subsidiary facts established. *Muir Brothers Co. v. Sawyer Construction* Co., 328 Mass. 413. The plaintiff did not file any brief and did not argue.

■ The alleged contract was drawn up by the broker, addressed to the broker giving him authority to sell the property for $7,000.00 or better for a certain length of time for a nominal consideration. Ordinarily, in a case of this kind, in order for the plaintiff to recover he must prove that this was a bilateral and enforceable contract supported by a legally adequate consideration, set out in the agreement. He must prove he fully performed all acts required of him. He must prove the sale for which he claims a commission, was negotiated and consummated during the period this contract was in existance. There is no question of bad faith here.

■ The contract is almost entirely in the first person and starts out, "I hereby appoint

you exclusive agent to make sale of the real property". To all intents and purposes this is a unilateral contract and must be construed as such in view of all the circumstances surrounding its execution and the events which happened thereafter. There is no evidence that the plaintiff did anything by way of selling or attempting to sell the property. His claim for a commission rests solely upon the fact that the defendant breached the contract by not giving him 3 days' notice in writing and selling the property for $5,500.00, which was $1,500.00 less than set out in the agreement. See: *King Features Syndicate, Inc. v. Cape Cod Broadcasting Co., Inc.,* 317 Mass. 652-655.

In the case of *DesRivieres v. Sullivan,* 247 Mass. 443, it was held that the contract was revocable without notice to the agent by the owners effecting the sale themselves. The court ruled that so long as the broker had not secured a customer ready, willing, and able to buy, the owner was not precluded from selling the property without liability for a commission to the plaintiff and the agency was revoked and notice of the revocation was not necessary to bar the broker's claim. The court said the term "exclusive" did not deprive the defendant of the power to revoke the agent's authority; the broker's power was not coupled with an interest and it came to an end when the subject matter of the agency was disposed of by the principal. Also in that case, the agreement called for

the owner to pay a regular brokerage commission *"in any event"* when the sale was consummated. The court said that the words *"in any event"* did not make the defendant liable to pay the commission unless the plaintiff was the efficient cause of the sale and did not impose liability upon the defendant when the sale was the result of her own efforts.

In the instant case, the words used were "and in case said property is sold within said time either through ourselves or any other person, *then in that case* promise to pay you (    ) percent *on the whole amount for which said property may be sold"*. This phraseology seems to have a similar import to the words *"in any event"* used in the *DesRivieres* case.

This case was supported and reaffirmed in the case of *Bartlett v. Keith,* 325 Mass. 625. The only difference being that in the *DesRivieres* case, an exclusive agency was given and in the *Keith* case an exclusive right of sale was given. In both of these cases, there was a normal consideration and the listing was to be exclusive for a designated period. In the *Bartlett* case, there were other additional efforts by way of consideration to support the exclusive covenant. The court said,

"In our opinion the defendant's promise was just as much unilateral and equally without consideration until the performance of the condition, as though the broker had been given an exclusive agency rather than an exclusive right of sale.

Here the condition was at least the procuring of a customer who was able, willing, and ready to buy on the owner's terms. See: *Walker v. Russell*, 240 Mass. 386, 390. The plaintiff's contention that by listing the property she fully performed the service required is fallacious. The writing says nothing of the kind, and the usual rule is to the contrary. *Elliott v. Kazajian*, 255 Mass. 459, 461; *Walsh v. Grant*, 256 Mass. 555, 557; *John T. Burns & Sons, Inc. v. Hands*, 283 Mass. 420, 422. The defendant's objective, like that of any seller, did not stop with the placing of her property on the plaintiff's list. *Nor is the plaintiff's case aided by asserting that the defendant bound herself for ninety days when she did not bind herself at all. The acceptance of an offer to a unilateral contract must be by all the acts contemplated by the offer. Northampton Inst. for Savings v. Putman*, 313 Mass. 1, 7.

"There was no fraudulent revocation, and once the question of consideration is analyzed, this case falls within the usual principles of brokerage cases." Citing *Cadigan v. Crabtree*, 179 Mass. 474; *Elliott v. Kazajian*, 255 Mass. 459 and many other cases.

In the case of *Lattuca v. Cusolito*, 343 Mass. 747, there were two parcels and two separate listing agreements; the court enforced one, the bilateral contract, and did not enforce the other which it held to be unilateral, citing the *DesRivieres* and *Keith* cases.

The case of *Coan v. Holbrook*, 327 Mass. 221 cited by the plaintiff is clearly distinguishable from the case at hand. In that case, the

consideration for the contract was $1.00, but it further recites, "and your efforts to get this offer accepted". It was under seal, signed by the owner and the broker wherein she offered to sell the property and further authorized the broker to "Present this offer to any person for acceptance providing this offer is accepted on or before January 31st," and agreed *"not to withdraw this offer"* nor dispose of the *property other than through the broker* "within the *time above provided* and thereafter until *written notice to the broker"*. The court said the owner's offer to sell was still open and might validly be accepted by a prospective purchaser on February 2nd where the owner had not previously given such written notice of revocation as required in the *specific language in the agreement.*

In all the circumstances, the case before us follows the rule laid down in the *DesRivieres* and *Keith* cases cited supra.

The owner appointed the broker, it was an appointment not an employment; the contract was not under seal, there were no mutual promises and nothing was said as to what, if anything, the broker was to do by way of additional consideration as in *Coan v. Holbrook,* 327 Mass. 221, and see *John T. Burns, Inc. v. Brasco,* 327 Mass. 261, 263.

The owner appointed the defendant as exclusive agent to sell at $7,000.00 or better, for a definite term, nothing more. There was no limitation on a sale by the owner at a less

price by any language what so ever, and there was no promise by the owner to refrain from selling as in *Coan v. Holbrook,* cited supra. In that case, there were additional promises and additional things to be done by each party to the agreement; hence, the agreement was construed as bilateral. This agreement before us is a "bare appointment as exclusive agent to make sale in consideration of $1.00". §82 of the Restatement of Contracts, provides as follows: "A recital in a written agreement that a stated consideration has been given is conclusive proof of that fact only in the cases stated in §§243 and 244," which are not applicable here. Furthermore, the agreement stipulates real estate is to be sold when actually it is personalty, and the percentage of commission to be paid if sold by the owner is not indicated.

Having in mind this instrument was drawn by the plaintiff, any doubtful or uncertain language must be construed against him. *United Shoe Mach. Corp. v. Gale Shoe Mfg. Co.,* 312 Mass. 142. It is at best a right to sue for breach of contract. See: *Bartlett v. Keith,* cited supra.

The plaintiff acquired no rights under his appointment as exclusive agent until he or someone had procured a customer ready, able, and willing to buy on the terms set out therein; namely, for $7,000.00 or better. As was said in *Bartlett v. Keith,* supra,

"The consideration contemplated by the parties

was the production of a purchaser, and until one was produced it was a unilateral contract and no more than a continuing offer to sell".

In view of this decision, we do not find it necessary to discuss the question of whether or not this should have been a suit in equity, nor whether the action should be for breach of contract for nominal damages. This is the usual offer of a unilateral contract, and the sale by the defendant terminated it.

*We do not think the finding was permissible on the facts, and judgment for the defendant should be ordered.*

Harold J. Sullivan, of Hyannis, for the Defendant.